**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John LADELL, Defendant–Appellant.**

No. 97–1567.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1997.

Decided Oct. 15, 1997.

Suzanne M. Wissmann (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Phillip J. Kavanuagh, Thomas Day (argued), Office of the Federal Public Defender, East St., Louis, IL, for Defendant–Appellant.

Before FLAUM, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

A jury found John Ladell guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Although Ladell raises several issues on this appeal, only one— whether the district court correctly denied his motion to suppress the gun that formed the basis of his conviction—is seriously pressed. The answer to this question turns on whether the district court correctly determined that Ladell's mother validly consented to a search of a bedroom where the weapon named in the indictment was found.

One of the most hazardous of police duties is responding to emergency 911 calls reporting family disturbances involving guns. Police never know what to expect when answering calls of this sort, and that was the situation on a May morning last year in Belleville, Illinois, just outside St. Louis.

The Belleville P.D. received a 911 call from a woman who reported that she had been struck with a gun during a disturbance at an apartment unit (# 5) in a building on South 72nd Street. Within minutes, two officers— Patrolman Gutreuter and Lieutenant Goodwin—arrived on the scene, apparently from separate locations. While looking for apartment 5 they encountered an hysterical woman, Shirley Ladell, who yelled that her brother had smacked her in the head with a gun and threatened to kill her. Shirley led the officers to apartment 5, where they spotted the brother, John Ladell, in a hall outside a bedroom, one of two in the small unit. The police ordered Ladell to get up against a wall, and in a moment he was handcuffed. During this time, Ladell yelled at his sister and she hollered back at him. Ladell was taken outside by officers (by this time, other officers had arrived) and placed in a police cruiser, leaving Shirley and her mother, Ida Ladell, in the apartment.

With Ladell in the cruiser, two officers did a sweep through the apartment to see if anyone else was there, and Gutreuter saw several bullets (6 for a .357 magnum, 41 for a .22, and 29 for a 12–gauge shotgun) in the back bedroom, the room Shirley said contained her brother's gun. While the sweep was going on, one of the officers asked Ida if they could search the apartment, and in testi-

mony the district judge believed, she replied they could "search anywhere" they wished. In the bedroom, under a mattress, the officers found a black vinyl bag. Lieutenant Goodwin, a 25-year veteran of the Belleville P.D., felt the outside of the bag and thought it contained a gun. A search of the bag disclosed two: a Smith and Wesson .357 magnum pistol with its hammer cocked and a Maverick 12-gauge, pistol-grip shotgun. Ladell's prior felon record led to his subsequent indictment and conviction on the § 922(g)(1) charge.

[redacted] We review the ultimate search issue *de novo*, *Ornelas v. United States*, — U.S. —, 116 S.Ct. 1657, 134 L.Ed.2d 911, but historical facts, the domain of the trial court, are reviewed only for clear error. And as to the facts, it was not clearly erroneous here for the district court to find that Ida Ladell, without coercion, said it was O.K. to "search anywhere." We also think the district judge's conclusion, a mixed question of law and fact, that Ladell's mother had actual or at least apparent authority to consent to the quest, a subject of our *de novo* review, was correct.

Searches by consent make a police officer's job easier because neither probable cause nor a search warrant is required. But what should be a rather cut-and-dried area of the law to understand and apply is anything but, as "consent searches" are fertile ground for suppression litigation in courtrooms all over the country. Was the consent voluntary? Was it a broad or narrow consent? Did the person who gave consent know it could be withheld? Was the consent expressed or implied, and if implied, is that O.K.? When, as here, the consent comes from a third party, issues relating to actual or apparent authority to consent and the relationship between the parties come to the fore.

[redacted] Third-party consents to search the property of another are based on a reduced expectation of privacy in the premises or things shared with another. When an apartment, for example, is shared, one ordinarily assumes the risk that a co-tenant might consent to a search, at least to all common areas and those areas to which the other has access. A third-party consent is also easier to sustain if the relationship between the parties-parent to child here, spouse to spouse in other cases—is especially close.

In this case, it is significant to note that the police were invited into the apartment to investigate a charge of domestic violence. It is also undisputed that Ida was the primary tenant in the apartment and that she had access to all of its rooms. The police had a right to assume, under these circumstances, that Shirley and her mother did not want John Ladell to shoot anyone. They also could safely assume that both mother and daughter wanted them to do what was necessary to defuse an explosive situation; doing that would require ridding the apartment of its arsenal. Furthermore, there is no evidence that Ida was coerced into saying "search anywhere," and it is clearly logical that a mother in her situation would make that request.

Given the totality of the circumstances here, the police could safely view Ladell's mother as someone with at least apparent authority to consent to a search of the apartment, including the back bedroom, for a weapon. And the scope of the search did not exceed the consent. That would not be the case if, for example, the police read John Ladell's diary (where he confessed to evading taxes on his income) which was hiding under his mattress. Ladell's best potential argument (but still a loser)—that Ida's "consent" could not, under *United States v. Rodriguez*, 888 F.2d 519 (7th Cir.1984), extend to opening the bag itself—was waived because it wasn't raised in the district court or in his opening brief on appeal. In short, everything here points to a valid consent to search, and the motion to suppress was properly denied.

[redacted] This brings us to the other issues, which we dispatch in short order. First, the district court correctly doused Ladell's argument that he could defend against the charge by claiming, in essence, that he didn't know it was against the law for a convicted felon to possess a gun. Knowledge of this sort is not an element that must be proved to support a conviction under § 922(g)(1). *United States v. Smith*, 940 F.2d 710, 713–14 (1st Cir.1991);

*United States v. Perez*, 897 F.2d 751, 754 (5th Cir.1990).

Ladell, who is black, next claims that the government violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when it used a preemptory challenge to strike the only potential black juror in the jury pool. That juror, however, said during the voir dire examination that she knew a "Ladell family" when she was growing up and that John himself looked familiar. Later on, she admitted that she felt uncomfortable at the prospect of sitting on the jury. When the government struck the juror, the AUSA said, in response to a *Batson* challenge, that the juror was removed because she had expressed "discomfort" about sitting on the panel.

The government's reason for striking a juror need not be a good one, but as long as it is not based on race, a *Batson* challenge will invariably come up short. *United States v. Brown*, 34 F.3d 569, 571 (7th Cir.1994), *cert. denied*, 513 U.S. 1167, 115 S.Ct. 1136, 130 L.Ed.2d 1097 (1995). That's the case here, and the *Batson* challenge was correctly ruled out of order.

Lastly, we conclude that the district court did not abuse its discretion when it permitted the officers to testify about what Shirley Ladell yelled to them upon their arrival at the scene. Shirley's words, we believe, were clearly excited utterances and admissible as an exception to the hearsay rule under § 803(2) of the Federal Rules of Evidence. *See United States v. Moore*, 791 F.2d 566, 570 (7th Cir.1986).

For these reasons, the judgment of the district court is

AFFIRMED.