**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raymond AGHEDO, Defendant–
Appellant.**

No. 98–1333.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1998.

Decided Oct. 27, 1998.

edo's motion to suppress a notebook obtained in the warrantless search of the apartment where Mr. Aghedo was staying. A jury found Mr. Aghedo guilty, and he now appeals the district court's denial of his motion.

# I

## BACKGROUND

### A. Facts

FBI agents obtained a warrant for Mr. Aghedo's arrest, naming him as part of a heroin distribution conspiracy. Although the warrant related only to drug distribution, the FBI agents also possessed evidence of Mr. Aghedo's credit card fraud, which they turned over to postal investigators.

Thereafter, pursuant to the warrant, the investigators arrested Mr. Aghedo in the lobby of an apartment building. For reasons undisclosed by the record, Mr. Aghedo accompanied the FBI agents and postal investigators to another apartment building, and then to an apartment in that building, which was leased in the name of Adeniji Dairo. Dairo told the officers that Mr. Aghedo was a guest in her apartment. She signed a form, allowing the officers to search the entire apartment, including the room where Mr. Aghedo was staying. The apartment had two bedrooms—one occupied by Mr. Aghedo and one occupied by Dairo and her children. Although he was present when Dairo signed the consent form, Mr. Aghedo did not object to her consent.

After entering the open door of Mr. Aghedo's room, the officers found and seized a black and white composition notebook from under the box spring and mattress. The notebook contained several hundred credit card account numbers and social security numbers.

Mr. Aghedo had been staying with Dairo rent-free for approximately six months. Mr. Aghedo's brother was the father of one of Dairo's children. During Mr. Aghedo's stay in Dairo's apartment, she had free access to Mr. Aghedo's room, which was never locked. Dairo had entered the room several times while Mr. Aghedo was not there, sometimes

George Jackson, III (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Standish E. Willis (argued), Chicago, IL, for Defendant–Appellant.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Raymond Aghedo was charged in an indictment with using the mail to defraud and with possessing credit cards with intent to defraud. The district court denied Mr. Agh-

to clean. She also stored some clothing in dressers in Mr. Aghedo's room.

## B. Proceedings in the District Court

The district court denied Mr. Aghedo's motion to suppress the notebook. Mr. Aghedo contended that Dairo did not have authority to consent, and even if she did, her consent was not sufficient to allow the FBI agents to search underneath his mattress and to obtain the notebook. The court held that, while Dairo did not have apparent authority, she did have actual authority. As the sole lessee of the apartment, who routinely entered Mr. Aghedo's room to clean it and to store personal items there, she had joint access and control. The court also noted that Mr. Aghedo left the door to the room open, did not pay rent, hid the notebook because he knew Dairo entered the room and was silent when Dairo consented. Finally, the district court noted that, as a guest in Dairo's home, Mr. Aghedo assumed the risk that Dairo would consent to a search.

The court held that Dairo's consent was general; the investigators' search and seizure were therefore within the scope of her consent. It also held that, because this was a consent search, the notebook did not have to be in plain view.

## II

## DISCUSSION[1]

### A.

■ Mr. Aghedo initially contends that Dairo did not have authority to consent to the search of his room and under his mattress. Although Dairo occasionally cleaned the room and stored clothing there, this actually did not rise to the level of mutual use or common authority, he contends.

■ Although the Fourth Amendment generally prohibits searches and seizures performed without a warrant, there is an exception when someone with actual or apparent authority consents to the search or seizure. *See Schneckloth v. Bustamonte*, 412

U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A third party with common authority over the premises sought to be searched may provide such consent. *See United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Common authority is based upon mutual use of property by persons generally having joint access or control. *See id.* at 171 n. 7, 94 S.Ct. 988.

In this case, Dairo had complete access to Mr. Aghedo's room. The apartment lease was solely in her name, she occasionally entered the room to clean it and she stored clothing in the room. These facts indicate that she had actual authority to consent to the search. In *United States v. Chaidez*, 919 F.2d 1193 (7th Cir.1990), *cert. denied*, 502 U.S. 872, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991), this court similarly held that a defendant's stepdaughter had authority to consent to a search of his house because the lease was in her name, she paid the house's bills and she had clothing in the bedroom. *See id.* at 1202. Additionally, Mr. Aghedo's claim that Dairo did not have authority to consent is undercut by his failure to object at the time of her consent. *See United States v. Saadeh*, 61 F.3d 510, 518 (7th Cir.), *cert. denied*, 516 U.S. 990, 116 S.Ct. 521, 133 L.Ed.2d 428 (1995).

This court has observed that two people inhabiting an apartment might not have authority to consent to a search of each other's rooms. *See United States v. Ladell*, 127 F.3d 622, 624 (7th Cir.1997) ("When an apartment, for example, is shared, one ordinarily assumes the risk that a co-tenant might consent to a search, at least to all common areas and those areas to which the other has access."); *United States v. Duran*, 957 F.2d 499, 505 (7th Cir.1992) ("Two friends inhabiting a two-bedroom apartment might reasonably expect to maintain exclusive access to their respective bedrooms without explicitly making this expectation clear to one another."). Here, however, Dairo had more access and control to Mr. Aghedo's room than the typical friend sharing an apartment with another friend. It is her access and control of the room in question

---

1. During oral argument, the defendant withdrew from contention the issue of probable cause and insufficiency of the arrest warrant. Therefore, we do not consider that issue.

that gives Mr. Aghedo a "reduced expectation of privacy in the premises or things shared with another." *Ladell*, 127 F.3d at 624.

Mr. Aghedo further argues that even if Dairo had authority to consent to search the bedroom, she did not have authority to consent to search under the mattress. We cannot accept this argument. The record demonstrates that her access to the room was plenary. She cleaned the room and stored items there, including intimate apparel. Such access and use suggests no limitation on her control and therefore on her authority to consent to a search.

For the foregoing reasons, we hold that Dairo had actual authority to consent to the search of Mr. Aghedo's bedroom, including the area under his mattress. Therefore, we need not consider whether Dairo had apparent authority to consent to the search and seizure.

### B.

Finally, Mr. Aghedo argues that the investigators went beyond the scope of Dairo's consent. He contends that the terms of any consent did not allow the investigators to look under the mattress and seize the notebook.

The scope of a consent to search is generally determined by the investigators' express object of the search, applying a standard of reasonableness to the parties' understanding of that object. *See Saadeh*, 61 F.3d at 518. "We apply a standard of 'objective reasonableness,' asking how a reasonable person would have understood the conversation between the law enforcement officer" and the person giving consent. *Id.* (citing *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). " 'A lawful search of fixed premises generally extends to the entire areas in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.' " *Id.* (quoting *United States v. Ross*,

456 U.S. 798, 820–21, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)).

Dairo signed a general consent to the investigators' search, which included consent to search anywhere in the bedroom. She also authorized the agents to "take any items which they determined may be related to their investigation." Such a general consent to search allows investigators to search under a mattress. *See Ladell*, 127 F.3d at 624. Moreover, evidence of drug transactions and credit card fraud, such as drug paraphernalia or notebooks, could potentially be found under the mattress. Therefore the ·search under the mattress was within the express object of the investigators' search, and also within Dairo's general consent. Some language in *Ladell* suggests that it would exceed the scope of a general consent to read a diary kept under a mattress. *See id.* However, the composition notebook in this case is different from a diary, because it is the type commonly used by drug dealers to keep records of drug transactions. Having discovered the book in the course of a lawful search, the inspectors acted within their authority when they opened and read the contents to ascertain whether it was evidence of the crime.[2]

### Conclusion

For the reasons stated in the foregoing opinion, we affirm the judgment of the district court.

AFFIRMED.

---

2. Because we hold that the investigators properly executed the search for and seizure of the notebook pursuant to Dairo's consent, we need not consider whether the plain view doctrine applies in this case.