# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2214

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TIMOTHY BROWN, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-CR-30123—**Michael J. Reagan**, *Judge.*

ARGUED FEBRUARY 20, 2003—DECIDED MAY 2, 2003

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Timothy Brown, Jr. was convicted of possessing cocaine base and cocaine hydrochloride with the intent to distribute, within one thousand feet of public housing. On appeal, Brown challenges the district court's denial of his motion for judgment of acquittal, arguing that there was not sufficient evidence to convict him of possession of the drugs seized at his apartment. He also argues that the court erred by denying his motion to suppress the drugs and other evidence that were seized pursuant to an invalid consent, and by permitting the government to introduce evidence of drugs seized from another residence. We reject those arguments and affirm.

## I.  BACKGROUND

In July 2001, law enforcement agents were attempting to execute state arrest warrants for Brown as part of a fugitive task force. On July 17, 2001, the agents received an anonymous tip that Brown was living at an apartment on Brinson Street in East St. Louis, Illinois.[1] After entering the apartment to arrest Brown, the agents found money, crack cocaine, marijuana, a gun, and four individuals in the home, but not Brown. Three days later, the same anonymous tipster called the agents and told them Brown was now living at an apartment on Lincoln Street. The agents went to the Lincoln apartment building and determined that someone was in Brown's apartment when a plastic bag containing crack cocaine was thrown from his window and landed near an agent's foot. Seconds later, an agent saw an unidentified male in the window of the apartment holding a gun. Believing that Brown was inside, the agents forcibly entered the apartment and arrested Brown. While some agents were arresting Brown, others conducted a protective sweep of the apartment and found Seneca Hobson and Cortez Straughter in one of the bedrooms, a bag containing crack cocaine on a bedroom window sill, and a handgun under "a large pile of clothes."

After the apartment was secured, a deputy marshal called an Assistant United States Attorney (AUSA) for guidance on searching the apartment and was told to get consent from the apartment leaseholder, Stephon

---

[1] The agents later learned that Brown may have moved from Brinson Street sometime between July 9, 2001, and July 18, 2001. The record, however, contains conflicting evidence as to whether and when Brown moved from this residence. Brown maintains that he moved out of the apartment on July 9, 2001, and Brown's landlord, Mr. Andrew Thomure, testified that he did not learn that Brown may have moved out until approximately July 18, 2001.

Lowery. Deputy Davis drove to Lowery's place of employment and when he informed Lowery that Brown had been arrested at the Lincoln apartment, Lowery explained that he (Lowery) did not live there and that his only connection with the apartment was that he had leased it as a favor to Brown. Lowery told the deputy that he paid the rent with money that Brown had given him and when the landlord gave him the keys, he gave them to Brown. After this conversation, Lowery signed a consent to search form and the deputy, rather than contacting the AUSA, called the agents and directed them to search the apartment. The agents then seized approximately 143.8 grams of cocaine base, 246.1 grams of cocaine hydrochloride, baking soda (a substance often used to make crack cocaine), and nearly $5,000 from common areas of the apartment.

Deputy Davis reported the findings to the AUSA, who, after learning of Lowery's relationship to the apartment and concluding that the consent was probably invalid, ordered the agents to stop the search. The deputy returned to the office where, under the supervision of the AUSA, he applied for and obtained a warrant to search the apartment. The affidavit in support of the search warrant application did not contain any information regarding the evidence seized during the "invalid" consent search. After the warrant was approved, the agents conducted another search of the apartment but found no additional evidence.

At trial, the district court denied Brown's motion to suppress the evidence seized at the Lincoln apartment and pursuant to Federal Rule of Evidence 404(b) permitted the government to use the evidence obtained at the Brinson apartment. At the close of evidence, the district court denied Brown's motion for judgment of acquittal. Brown was convicted by a jury and now appeals the district court's rulings.

## II.  ANALYSIS

A.  Sufficiency of the Evidence

Brown moved for acquittal under Federal Rule of Criminal Procedure 29(a) claiming the government failed to present sufficient evidence to support his conviction. We review the district court's decision de novo. *United States v. Griffin*, 194 F.3d 808, 816 (7th Cir. 1999). The question we ask here is whether the evidence presented, when viewed in the light most favorable to the government, could support any rational trier of fact's finding of all the essential elements of the crime beyond a reasonable doubt. *United States v. Williams*, 298 F.3d 688, 691-92 (7th Cir. 2002). An appellant "faces a nearly insurmountable hurdle" when attacking the sufficiency of the evidence used to convict him at trial because our role is not to weigh evidence or make credibility determinations. *United States v. Pulido*, 69 F.3d 192, 205 (7th Cir. 1995). Instead, we will reverse the district court's ruling only if the record is devoid of evidence from which a jury could find guilt beyond a reasonable doubt. *United States v. Hach*, 162 F.3d 937, 942 (7th Cir. 1998).

To sustain a conviction for possession with the intent to distribute cocaine base or cocaine hydrochloride, the government must show beyond a reasonable doubt that Brown (1) knowingly and intentionally possessed cocaine base or cocaine hydrochloride; (2) possessed the cocaine base or cocaine hydrochloride with the intent to distribute it; and (3) knew that the cocaine base or cocaine hydrochloride was a controlled substance. *Griffin*, 194 F.3d at 816. Brown argues that the government failed to establish that he possessed the drugs found in his apartment and failed to produce any evidence linking him to those drugs. We disagree. The government need not catch a defendant red-handed to satisfy the possession requirement, rather, it only needs to demonstrate that the defen-

dant constructively possessed drugs. *United States v. Starks*, 309 F.3d 1017, 1022 (7th Cir. 2002). To establish constructive possession, the government must "establish a nexus between the accused and the contraband[ ] in order to distinguish the accused from a mere bystander." *United States v. Richardson*, 208 F.3d 626, 632 (7th Cir. 2000).

Brown's constructive possession is established by his "substantial connection to the house." *See Richardson*, 208 F.3d at 632; *United States v. DiNovo*, 523 F.2d 197, 201 (7th Cir. 1975). Brown, like the defendant in *Richardson*, lived at the Lincoln residence where the drugs were found, was at the residence during the search, and the officers found his clothes, money, and other belongings in the apartment. *See* 208 F.3d at 632. In addition, Stephon Lowery's statements indicate that Brown was the sole tenant of the apartment. Since the drugs were found in readily accessible locations of the apartment that Brown alone was renting, there is sufficient evidence for the jury to have found that Brown had the "recognized authority in his criminal milieu—to possess and determine the disposition of them." *See Windom*, 19 F.3d at 1199; *see also Richardson*, 208 F.3d at 632; *United States v. Jackson*, 51 F.3d 646, 655 (7th Cir. 1995); *United States v. Hunte*, 196 F.3d 687, 692 (7th Cir. 1995); *United States v. Pace*, 898 F.2d 1218, 1223, 1246 (7th Cir. 1990); *United States v. Garza-Hernandez*, 623 F.2d 496, 502 n.6 (7th Cir. 1980).[2]

---

[2] Brown claims that Cortez Straughter, who also was found in the Lincoln apartment during the protective sweep, "could have had control over the drugs" because "[l]aw enforcement [agents] testified that Straughter was in fact a suspect because he had been living at the apartment" and the agents "had information that Straughter sold drugs." While such speculation may be true, it does not absolve Brown of criminal liability—we have repeat-
(continued...)

B. Motion to Suppress Evidence—Lincoln Apartment

When reviewing an appeal from a district court's denial of a motion to suppress evidence, we examine the district court's findings of facts for clear error and its conclusions of law de novo. *United States v. Lenior*, 318 F.3d 725, 728 (7th Cir. 2003). If consent to search is given by a third party it is incumbent upon the government to demonstrate by a preponderance of the evidence "that permission to search was obtained from a third party who possessed common authority over, or other sufficient relationship to, the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974); *see also United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000).

Brown contends that the agents continued to search the Lincoln apartment without a warrant after they knew, or reasonably should have known, that they did not have valid consent to search.[3] The government asserts that it was reasonable for the agents to believe that Lowery had the authority to consent.[4] We agree with Brown. Lowery

---

[2] (...continued)
edly held that constructive possession can be exclusive or shared with others. *See Starks*, 309 F.3d at 1022; *Richardson*, 208 F.3d at 632; *DiNovo*, 523 F.2d at 201.

[3] Brown does not dispute the validity of the protective sweep which turned up the cocaine outside of the house, the cocaine on the window sill, and the gun under the large pile of clothing.

[4] The government also contends that "in utilizing Stephon Lowery as a 'strawman' lessee, the defendant assumed the risk that Lowery might one day assert his legal right of control over the apartment." We have previously rejected this argument, *United States v. Chaidez*, 919 F.2d 1193, 1201 (7th Cir. 1991), since "[r]enting a place 'for' someone else may create a sublease. A landlord does not have authority to permit a search of his tenant's
(continued...)

informed Deputy Davis that his only connection with the apartment was that he leased it for Brown as a favor; Lowery stated that he did not have keys to the apartment, had not paid any money for the apartment, and did not keep any belongings there. Common authority requires "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n.7.

Although it is clear that Lowery could not consent to the search of Brown's apartment, this is a hollow victory for Brown, because we find the evidence seized was properly admitted under the inevitable discovery doctrine. This doctrine allows the use of evidence if the government can show that the information "ultimately or inevitably would have been discovered by lawful means." *United States v. Gravens*, 129 F.3d 974, 979 (7th Cir. 1997). To demonstrate that a discovery was truly "inevitable," the prosecution must establish that it had probable cause and prove the existence of "a chain of events that would have led to a warrant . . . independent of the search." *United States v. Brown*, 64 F.3d 1083, 1085 (7th Cir. 1995); *see also*, *United States v. Jones*, 72 F.3d 1324, 1330 n.8 (7th Cir. 1995). Because "the inevitable discovery doctrine is not an exception to be invoked casually," *Gravens*, 129 F.3d at 980, we will apply the doctrine only where is it clear that "the deterrence rationale of the exclusionary rule has so little basis that the evidence should be received." *United States*

---

[4] (...continued)

leasehold, and the same holds true for a tenant and his subtenant. Use of and access to the property are the touchstones of authority." *Id.*

*v. Cotnam*, 88 F.3d 487, 496 (7th Cir. 1996) (citing *Nix*, 467 U.S. at 444).

Brown argues that the district court erred in applying the inevitable discovery doctrine because but for finding the drugs and money seized, the agents would not have sought a warrant. We disagree. This is not a case in which the government simply disregarded Brown's constitutional rights and blindly searched his apartment. The record indicates that the agents went to Brown's residence with the purpose of arresting him on outstanding state warrants, and after arresting him, contacted the U.S. Attorney's office to seek guidance on how to proceed with a search of the apartment. It was only at the direction of an AUSA that the agents sought and secured Lowery's consent to search the apartment. We have no doubt that if there had been no Lowery from whom to obtain consent, or if the AUSA had known of the defect in the consent immediately after Deputy Davis spoke with Lowery (rather than after the search had concluded), the AUSA would have instructed the marshals to obtain a search warrant before beginning the search.

The exclusionary rule is a sanction that is supposed to be proportioned to the wrongdoing that it punishes; the rule should not be used to make the person whose rights have been violated better off than he would be if no violation had occurred. *United States v. Salgado*, 807 F.2d 603, 607 (7th Cir. 1986). We have found that the law enforcement agents were not justified in searching Brown's apartment pursuant to Lowery's consent, but here, as in *Salgado*, the agents had more than enough information, without the evidence uncovered during the invalid consent search, to obtain a warrant.[5] The only mistake these agents

---

[5] In the search warrant application, the marshals did not mention the evidence that was found during the invalid consent

(continued...)

made was driving to Lowery's place of employment to secure his consent rather than driving to the courthouse to obtain a warrant. *See id.* at 606 (applying inevitable discovery doctrine where the "information in the agents' possession that owed nothing to [one of the agents'] search abundantly established probable cause for obtaining a warrant . . . the warrant would have been obtained and executed even if [the agent] had never made his search"). Because the agents corrected their error shortly after completing the search, and obtained a search warrant without disclosing the fruits of that invalid search, we hold that the inevitable discovery rule applies in this case and the district court did not err in admitting the evidence.[6]

---

[5] (...continued)
search; the application indicated that the agents had information from a reliable tipster that Brown lived at the Lincoln apartment and only mentioned the drugs and gun found during the protective sweep. Brown asserts that the affidavit supporting the warrant application should have apprised the magistrate of the invalid consent search and the evidence seized. We disagree. First, whether or not there was a consent search is irrelevant to the determination of probable cause. Second, had the government done as Brown suggests, any search warrant flowing from such an affidavit would have been tainted by the illegal search, and any evidence obtained pursuant to such a warrant would have been fruit of the poisonous tree.

[6] Brown also contends that the court erred in admitting, under Federal Rule of Evidence 404(b), evidence seized during the search of the Brinson apartment. Even if the district court erred in admitting this evidence, it was harmless error. The admissible evidence lawfully recovered at the Lincoln apartment was overwhelming: the search revealed approximately 143.8 grams of cocaine base, 246.1 grams of cocaine hydrochloride, and nearly $5,000 in cash. This evidence alone was sufficient to support Brown's conviction. *See United States v. Brown*, 250 F.3d 580, 586 (7th Cir. 2001) ("Error is rendered harmless when it is
(continued...)

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[6] (...continued)
clear beyond a reasonable doubt that a rational jury would have convicted defendants absent the erroneously admitted evidence.").