**UNITED STATES of America,
Plaintiff,**

v.

·Odell CORLEY, a/k/a "Nasih
Khalil Raíd", Defendant.

No. 3:02–CR–116.

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 15, 2004.

Bernard Van Wormer, United States Attorneys Office, Hammond, IN, for Plaintiff.

Jerry T. Jarrett, Robert L. Lewis and Associates, Gary, IN, Jeffrey Schlesinger, Crown Point, IN, for Defendant.

## *ORDER*

LOZANO, District Judge.

This matter is before the Court on Defendant's Motion to Suppress, filed April 6, 2004. For the reasons set forth below, the motion is **DENIED.**

*BACKGROUND*

Defendant faces the death penalty if convicted on at least one of four death-eligible counts in a superseding indictment arising from the August 27, 2002, attempted robbery of the First State Bank of Porter, Pines Branch. Shortly before the May 2004 trial setting, Defendant learned of the Government's intention to use against him portions of a journal seized from his mother's home soon after his arrest in 2002. Defense counsel initially believed the journal was found in sealed duffle bag (Mot. to Suppress at 1), but later determined it was discovered in the closed drawer of a desk that was located under a tarp in Defendant's mother's backyard (Stipulation at 1). Defendant asserts the journal was seized in violation of his Fourth Amendment rights and asks the Court to prevent the Government from

introducing it during any portion of his trial.

## FINDINGS OF FACT

In connection with the April 23, 2004, hearing on Defendant's motion, the parties agreed to forego testimony and proceed solely on the basis the following factual stipulation, which was filed the same day and signed by Defendant:

On September 3, 2002, federal agents searched the residence located at 806 Liberty Trail in Michigan City, LaPorte County, Indiana. Prior to conducting this search, agents arrested the Defendant, Nasih Raíd, a/k/a Odell Corley, on suspicion of bank robbery. Defendant was not present when the search was conducted.

The residence at 808 Liberty Trail was owned by Barbara Aldridge, Defendant's mother. She voluntarily consented to the search of the residence. Prior to conducting the search, agents spoke to her about areas of the house which were accessible to the Defendant. She informed them that he sometimes slept in the basement of the house and that he had furniture and personal belongings which he was temporarily storing in her backyard, next to a tool shed. These items were not under any shelter, but where covered by a clear sheet of plastic and a blue, plastic tarp. The agents pulled back the tarp and plastic sheet and searched the area. They found the papers, which are the object of the pending Motion to Suppress, in a closed desk drawer.

(4/23/04 Stipulation at 1.) At the April 23, 2004, hearing the Court cautioned both parties that their joint decision to proceed on this sparse factual stipulation might redound to their detriment, but the Court ultimately deferred to their joint preference.

The "Consent to Search" form executed by Defendant's mother (whose last name is shown as "Aldridge" in the factual stipulation but which appears as "Wilson" on the consent-to-search form and in Defendant's pleadings) was later submitted as Joint Exhibit 1 to the April 23, 2004, hearing. The form demonstrates Defendant's mother gave her consent for "officers to seize any article of property which they consider evidence."

At the time of the search, Defendant was an adult. As demonstrated by the information in several sealed filings submitted in this case, Defendant was born on November 27, 1964. The Court's many observations of Defendant throughout this case confirm he has not been a minor for many years.

## CONCLUSIONS OF LAW

Defendant does not challenge the validity of his mother's consent to the search of her residence. Instead, he argues that the agents conducting the search knew the items under the tarp did not belong to his mother (hereafter, "Ms.Wilson"), and that Ms. Wilson could not consent to the search of those items, including the desk in which the journal was found. (See 4/4/04 Memo. in Support of Mot. at 1; 4/12/04 Memo. in Support of Mot. at 3.) The Court disagrees with Defendant's contention that any knowledge the agents may have had regarding whether the items under the tarp belonged to Ms. Wilson rendered the search improper under the Fourth Amendment.

▮ The Fourth Amendment protects against unreasonable searches and seizures. A search is generally considered unreasonable in the absence of a warrant issued upon probable cause, but there are several circumstances in which a warrant is not required, including consent given by a third party. *United States v. Basinski,*

226 F.3d 829, 833 (7th Cir.2000) (citing *United States v. Gevedon,* 214 F.3d 807, 810 (7th Cir.2000)); *United States v. Aghedo,* 159 F.3d 308, 310 (7th Cir.1998) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Where the government obtains evidence pursuant to one of the exceptions to the warrant requirement, it bears the burden of establishing the exception applies and must do so by a preponderance of the evidence. *Basinski,* 226 F.3d at 833 (citing *Nix v. Williams,* 467 U.S. 431, 444 n. 5, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).

■■■ A third party with common authority over the premises sought to be searched may provide valid consent, either through actual or apparent authority. *Aghedo,* 159 F.3d at 310 (citing *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). Common authority is based on mutual use of property by persons generally having joint access or control. *Id.* (citing *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988); *United States v. Duran,* 957 F.2d 499, 503–04 (7th Cir.1992). Third-party consent derives its legitimacy from the concept of assumption of risk: "[W]here a defendant allows a third party to exercise actual or apparent authority over the defendant's property, he is considered to have assumed the risk that the third party might permit access to others, including government agents." *Basinski,* 226 F.3d at 834 (citing *Matlock,* 415 U.S. at 171, 94 S.Ct. 988 n.7; *United States v. Jensen,* 169 F.3d 1044, 1049 (7th Cir.1999)); *see also Duran,* 957 F.2d at 504. Third-party consent may properly be given to search an area "as expansive as a house or as minute as a briefcase." *Basinski,* 226 F.3d at 834.

■■■ The test for assessing a third party's actual authority to consent to a search is articulated in *Matlock:* whether the third party has "mutual use of the property[,] ... generally ha[s] joint access or control for most purposes[,] ... and [whether] the others [using the property] have assumed the risk that one of their number might permit the common area to be searched." *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. 988; *see also United States v. Rith,* 164 F.3d 1323, 1328 (10th Cir.1999); *United States v. Gutierrez–Hermosillo,* 142 F.3d 1225, 1230 (10th Cir.1998) (citing *United States v. McAlpine,* 919 F.2d 1461, 1463–64 (10th Cir.1990)). This test is disjunctive, so a third party has authority to consent to a search of property if the third party has either: (1) mutual use of the property by virtue of joint access; *or* (2) control for most purposes over it. *Rith,* 164 F.3d at 1329. Mutual use of property by virtue of joint access is a fact-intensive inquiry requiring findings that the third party "entered the premises or room at will, without the consent of the subject of the search." *Id.* at 1330. However, control for most purposes is "a normative inquiry dependent upon whether the relationship between the defendant and the third party is the type which creates a presumption of control for most purposes over the property by the third party." *Id.* Critically, "[i]f a relationship creates such a presumption of control and is unrebutted, the third party has authority to consent to a search of the property." *Id.*

■■■ Two kinds of family relationships give rise to a rebuttable presumption of control over property for most purposes: (1) parent-child relationships; and (2) husband-wife relationships. *Rith,* 164 F.3d at 1330 (collecting cases). For example, a minor child living in the family's home may think of a bedroom as "his," but "the overall dominance will be in his parents." *United States v. DiPrima,* 472 F.2d 550, 551 (1st Cir.1973). Thus, a parent-child relationship raises a "presumption about the parties' reasonable expectations of privacy in relation to each other in spaces

typically perceived as private in" other kinds of relationships—for example, that of unrelated co-tenants who share an apartment. *Rith,* 164 F.3d at 1330. Although the Seventh Circuit has not squarely addressed the propriety of applying rebuttable presumptions in the context of a third party's authority to give law enforcement officers consent to search, the court has acknowledged that "third-party consent is also easier to sustain if the relationship between the parties—parent to child here, spouse to spouse in other cases—is especially close." *United States v. Ladell,* 127 F.3d 622, 624 (7th Cir.1997); *but see Duran,* 957 F.2d 499, 505 (citing *United States v. Whitfield,* 939 F.2d 1071, 1074–75 (D.C.Cir.1991) as support for conclusion that relationships of unrelated roommates or that of a parent with an "adult child living at home" involve "privacy expectations greater than those inherent in a marriage, making it more difficult to demonstrate common authority" for purposes of third-party consent to search).

One circuit has addressed the rebuttable presumption of control over property in a consent-to-search case involving an adult child living with a parent. In *Rith,* the Tenth Circuit concluded that, where an 18–year–old defendant lived at home with his parents but did not pay rent, a rebuttable presumption of control for most purposes by his parents arose with respect to the entire home—thus permitting the parents to access their son's bedroom without his consent. *Rith,* 164 F.3d at 1331. Because there was no evidence to rebut the presumption—including no evidence of a lock on the bedroom door or any agreement that the parents not enter the bedroom without their son's consent—the Tenth Circuit concluded the parents had actual authority to consent to a search of their son's bedroom. *Id.*

Similarly, in *United States v. Block,* 590 F.2d 535, 539–40 (4th Cir.1978), the Fourth Circuit held that a mother had actual authority to consent to a search of the bedroom of her 23–year–old son. The son was "a mere guest occupant of the room in his mother's home." *Id.* at 541. Although the bedroom "was considered exclusively his in the familial arrangement, his mother had and exercised unquestioned rights of access to it for cleaning and other household purposes." *Id.* at 538. The Fourth Circuit concluded that "the mother had the normal free access that heads of household[s] commonly exercise in respect of the rooms of family member occupants" and, therefore, "clearly had authority to permit inspection" of the bedroom. *Id.* at 541. In other words, "she shared access to the room. . . ." *Id.*

Here, Defendant's case turns on whether his relationship with his mother, Ms. Wilson, is the type that creates a presumption of control over the property for most purposes by Ms. Wilson. The inquiry also turns on a " 'practical understanding' of the way the parties have access to and share the searched property." *Rith,* 164 F.3d at 1330 (quoting *McAlpine,* 919 F.2d at 1463). As an adult child who "sometimes slept in the basement of" his mother's house, Defendant's familial relationship with Ms. Wilson gives rise to a rebuttable presumption that Ms. Wilson had control over her entire property for most purposes. The Court's assessment of the way the parties shared the property is informed by the fact that the seized items were not found in the basement area where Defendant sometimes slept. *Cf. Whitfield,* 939 F.2d at 1074 ("The bedroom itself was not a 'common area' "). Instead, they were found in a *common area* in the backyard—an area which, by its unrestricted nature, reinforces the rebuttable presumption that Ms. Wilson exercised control for most purposes over the things stored there, including the items under the

tarp. *See Ladell,* 127 F.3d at 624 (noting that, when an apartment is shared, one co-tenant ordinarily assumes risk that other co-tenant might consent to a search "at least as to all *common areas*") (emphasis added).

 Defendant offered no evidence to rebut the presumption that his mother exercised control for most purposes over her entire property. There is no indication Defendant ever cautioned Ms. Wilson not to remove the tarp and inspect or rummage through the items it covered. Plus, there is no indication Defendant signaled any intention to restrict his mother's access to the desk drawer by, for example, locking it (if the drawer even had a lock). Nor is there evidence that Defendant ever indicated a desire to restrict Ms. Wilson's access to the basement where he sometimes slept. The absence of contrary evidence converts the rebuttable presumption of control for most purposes by Ms. Wilson into a conclusion. The conclusion that Ms. Wilson exercised control for most purposes over all areas of her property satisfies the *Matlock* test for determining whether she had actual authority to consent to the search. She did.

As such, the Government has satisfied its burden of establishing valid consent by a preponderance of the evidence. Ms. Wilson had actual authority to consent to the search of the items under the tarp, including the desk drawer in which the journal was discovered. The Court need not address whether Ms. Wilson also had apparent authority to consent to the search. *See Aghedo,* 159 F.3d at 311 (conclusion that third party had actual authority to consent eliminated need to consider whether apparent authority also existed); *Rith,* 164 F.3d at 1331 (same).

 Ms. Wilson's consent to a general search allowing agents to "seize any article of property" they considered evidence allowed investigators to search inside the desk. *See Aghedo,* 159 F.3d at 311 (third party's signing a "general consent to search" authorized investigators to search under a mattress).

*CONCLUSION*

For the reasons set forth above, Defendant's motion to suppress is **DENIED.**