**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James D. LUEDTKE, Defendant–Appellant.**

**No. 04–1216.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 17, 2004.

Decided March 10, 2005.

Karine Moreno–Taxman, Michelle L. Jacobs, Office of the United States Attorney, Milwaukee, WI, for Plaintiff—Appellee.

Arthur J. Rooney, III, Sidley Austin Brown & Wood, Chicago, IL, for Defendant—Appellant.

Before COFFEY, MANION, and ROVNER, Circuit Judges.

## ORDER

James Luedtke was convicted of one count of armed bank robbery, one count of knowingly brandishing a firearm during a crime of violence, one count of possession of a firearm by a felon, and two counts of making false statements in the acquisition of a firearm, relating to the armed robbery of the Premier Community Bank in Iola, Wisconsin on December 13, 2002. In his appeal, he argues that the district court erred in denying his motion to suppress evidence stemming from a search of his apartment. We affirm.

## I. Background

In September 2002, Luedtke was released on parole from a jail sentence unrelated to this matter. When Probation and Parole Agent Michelle Davis attempted to contact Luedtke, she learned that he had neither left a mailing nor home address; the jail listed him as "homeless." Davis filled out an apprehension request, citing Luedtke for failing to keep officials informed of his whereabouts in violation of his parole. Luedtke's parole was originally scheduled to end on November 4, 2002, but Davis' filing of an apprehension request for Luedtke tolled his parole term.

Meanwhile, with Luedtke still at large, a man wearing a wig and a false beard and moustache robbed the Premier Community Bank on December 13, 2002. This crime was still unsolved on January 22, 2003, when Jason Hillestad contacted his former Wisconsin probation and parole agent, Ryan Peterson. Hillestad said he was living with Luedtke, whom Peterson also had supervised, and disclosed that Luedtke "had some guns and some cash." Peterson believed that Luedtke was on parole at the time and contacted Davis,

who rightly believed that her apprehension request had tolled his parole period and confirmed to Peterson that Luedtke was a parole violator. The two agents contacted Detective Lieutenant Patrick Geenan of the Appleton Police Department and requested assistance in performing a parole search of the apartment Hillestad and Luedtke shared.

On January 23, 2003, police officers obtained from the lessee, Hillestad, a written consent to search the apartment and a hand-drawn diagram of its layout. The police officers arrived and shortly thereafter entered the apartment using Hillestad's key and threw a flash bang grenade, which achieved its desired effect and disoriented Luedtke as they apprehended him in the kitchen. Peterson and Davis entered and searched the apartment without instruction or assistance from the Appleton police officers. The police officers did not participate in the initial search, as they had departed with Luedtke in custody. A short time after the search began, one of the parole agents contacted Detective Geenan and reported finding "a large sum of money as well as some handguns" in the apartment and again requested assistance. Geenan testified at the suppression hearing that, after returning to the apartment he observed in plain view while standing in the living room a semiautomatic handgun and a white plastic Goodwill bag that, upon later examination, contained bundles of money. It is not apparent from the record whether the bag was opened or transparent enough for the contents to be plainly visible, but the bag itself struck Geenan as significant, as he had been briefed earlier by an FBI agent about the Iola bank robbery. Geenan recalled in particular that a white Goodwill bag had been reported as being used in that robbery. Geenan telephoned the FBI

agent, who requested that he "freeze the scene."

Geenan, Peterson, and Davis then left the apartment in order to obtain a search warrant, leaving several probation agents and a police officer behind. The affidavit Detective Geenan drafted in support of the warrant specifically notes that the initial search was conducted by probation and parole agents and identifies Hillestad as the informant and lessee of the apartment. After a state judge issued the search warrant based on the affidavit, Geenan returned to the apartment with the FBI agent and another police officer, rejoining the parole agents who had remained there. Geenan entered the apartment with the FBI agent and another police officer and seized the Goodwill bag and found that it contained bait money from the Iola bank identified by serial number, as well as currency bundling straps from the Iola bank. They also discovered pieces of the robber's disguise as well as two rubber masks not used in the robbery, two loaded handguns, ammunition, knives, a cane containing a sword, brass knuckles, and an axe.

Thereafter, a grand jury indicted Luedtke for the armed robbery of the Premier Community Bank in Iola, Wisconsin and the related weapons offenses. The appellant moved to suppress the evidence seized from the apartment he shared with Hillestad, arguing that the initial warrantless search by parole and probation agents Peterson and Davis was illegal because Luedtke was no longer on parole, and that the warrant obtained later was thus tainted and invalid. A magistrate judge disagreed, declined the request for an evidentiary hearing, and recommended that the district court deny the motion to suppress. Luedtke objected, and the district court held an evidentiary hearing.

The hearing included testimony from F.B.I. Agents Davis and Peterson, Detective Geenan, another police officer who participated in the initial entry, Hillestad, and Luedtke himself. The prosecution and Luedtke, acting pro se, both presented evidence of the layout of the apartment, including a floor plan. The apartment includes a central living/dining area adjacent to the only bedroom, with an oblique viewing angle from the back of the "living room" to the bed. Peterson testified that during his initial search he observed a bag labeled "Goodwill" and a gun and gun belt in plain sight, which caused him to contact Geenan. Peterson did not specify where in the apartment he had observed these things, but Geenan testified that the bag and gun were in the bedroom, plainly visible from the living room. Hillestad's drawing shows a curtain rather than a door separating the bedroom and living area. Geenan said that he observed the Goodwill bag from the living room, and that "inside that bag you [could see] bundles of money." It is not apparent from the record whether the plastic bag was transparent or opened enough for Geenan to see the contents clearly from the living room. As Luedtke represented himself at trial and at the evidentiary hearing, Geenan's testimony was not developed as fully as it might have been through more vigorous cross examination.

The parties also provided testimony dealing with Luedtke's occupancy of the apartment, and the common use of the bedroom. Luedtke paid Hillestad $180 or $185 to "rent a bed from him." Hillestad testified at the suppression hearing that when he agreed to let Luedtke move in the two men reached an understanding that the bedroom "would be shared back and forth." He explained that Luedtke had "more or less taken over" the bedroom shortly after moving in. Hillestad admitted that he also kept personal property in

the room. In response to the court's questions, he explicitly stated that he did not grant Luedtke exclusive use of the bedroom. Moreover, both the floor plan and Hillestad's testimony at the hearing demonstrate that the apartment's one bathroom was accessible only through the bedroom. Thus, as a matter of common knowledge, Hillestad commonly passed through the bedroom to enter the bathroom.

The district court decided at the conclusion of the hearing that Luedtke was on parole at the time of the search, which obviated the warrant requirement. Luedtke's parole term was tolled by operation of Wis. Stat. § 304.072(1) (which states that upon the department of corrections "may toll all or any part of the period of time between the date of the violation and the date an order of revocation or reinstatement is entered."). The judge further found that the lessee Hillestad gave valid consent for the search, making the warrant obtained by the police valid in either event. Based on these findings, the trial court denied Luedtke's suppression motion.

## II. Analysis

It is undisputed that Hillestad gave consent for the search of the apartment. Luedtke maintains that Hillestad did not have authority to authorize a search of his bedroom in the apartment. Generally, "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock,* 415 U.S. 164, 170, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *see United States v. Denberg,* 212 F.3d 987, 991 (7th Cir.2000). The government bears the burden of demonstrating by a preponderance of the evidence that the party giving consent had such common

authority. *United States v. Brown,* 328 F.3d 352, 356 (7th Cir.2003). A question of consent is reviewed for clear error. *See United States v. Raibley,* 243 F.3d 1069 (7th Cir.2001); *Brown,* 328 F.3d at 356.

■ Both parties—each faulting the other—contend that the scope of Hillestad's consent was never properly raised as an issue in the district court. The government contends that during the suppression hearing Luedtke neglected to challenge Hillestad's authority to consent specifically to the search of the bedroom, and thus the government assumed that it could sustain the search of the bedroom based on Hillestad's general grant of consent to search the apartment. The prosecution, however, bears the burden of showing effective consent once it has been questioned. *Brown,* 328 F.3d at 356. Luedtke argues that the government failed to meet that burden by declining to rely on Hillestad's consent to justify entry into the bedroom. The prosecutor, when asked by the judge if "consent authorized entry into the bedroom," responded: "Judge, I won't take that position. It's unclear to me, but I won't take the position that it did." This exchange occurred during the examination of Detective Geenan, the first witness at the suppression hearing. Subsequently, Luedtke called Hillestad to the stand, and—notwithstanding the prosecutor's earlier demurrer—asked a series of questions concerning the voluntariness and competence of the consent he had given to the officers to search the bedroom. Those questions prompted the court to also ask Hillestad its own questions, pertaining to the joint use of the bedroom. The government declined to cross-examine Hillestad. The court later explicitly concluded that, although the government had represented "that it was not going to argue that consent extended throughout the apartment ... I think the evidence has really shown

that the consent given by Mr. Hillestad did extend throughout the apartment."

These events are analogous to the procedural history in *Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 374*, 175 F.3d 526 (7th Cir.1999), in which this court held that "a skeletal argument below, which the district court recognized and addressed, and which the party has now fleshed out and emphasized on appeal," is not waived when the trial court had the first opportunity to deal with the theory, the trial court fulfilled its factfinding role, and an adequate record on appeal exists. *Id.* at 529–30. We agree. *See also Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir.2002) (explaining that if an issue was not argued by the plaintiff but was "adequately raised" in the trial court, "the reasons behind the waiver rule do not require its application"). Thus, because the issue of the consent to the search of the bedroom was fairly raised and ruled upon in the trial court, the government may rely on that testimony to establish that Hillestad clearly gave consent for the officers to search the bedroom. *See Bailey*, 175 F.3d at 530.

■ Hillestad and Luedtke both lived in the apartment, but Luedtke occupied the bedroom. Hillestad, the lessee of the apartment, kept his belongings in there, and regularly entered and exited the room on his way to and from the bathroom. Taken together, these facts establish that the lessee had actual authority to give consent to another to search the entire apartment, including the bedroom. In a similar case, we upheld a consent search since the lessee of an apartment allowed police to search a bedroom used by a long-term guest where the lessee occasionally cleaned the room and stored clothing inside. *See United States v. Aghedo*, 159 F.3d 308, 310–11 (7th Cir.1998). In *Aghedo*, as with the factual situation presented here, the lessee's power was plenary. *See id.* at 311. Indeed, the facts of this case suggest actual authority to consent even more strongly than the *Aghedo* facts. The lessee in *Aghedo* entered the room in question occasionally to clean; Hillestad, in contrast, entered the bedroom freely, regularly, and presumably on an unscheduled basis to enter and depart from the bathroom, vitiating Luedtke's expectation of privacy there. "When an apartment ... is shared, one ordinarily assumes the risk that a co-tenant might consent to a search, at least to all common areas and *those areas to which the other has access.*" *United States v. Ladell*, 127 F.3d 622, 624 (7th Cir.1997) (emphasis added). It is apparent from the evidence that Luedtke, a sublessee, did not have exclusive access and control over the bedroom, which was a common thoroughfare. Moreover, Luedtke and Hillestad had agreed when Luedtke first moved in that the bedroom would be shared. The fact that Luedtke allegedly "took over" the bedroom does not alter Hillestad's specific reservation of his preexisting right to enjoy use of the room, or his rights as the lessee of the premises. Accordingly, we agree with the district court that Hillestad's consent to search the apartment extended to the bedroom.

AFFIRMED.