CALLAHAN, Circuit Judge,
dissenting:
The apparent authority doctrine requires that a police officer reasonably believe that a person consenting to a search has “shared use and joint access to or control over a searched area.” United States v. Welch, 4 F.3d 761, 764-66 (9th Cir. 1993) (emphasis omitted). The inquiry turns on “an examination of the actual consent as well as the surrounding circumstances.” United States v. Arreguin, 736 F.3d 1168, 1175 (9th Cir. 2013) (internal quotation marks omitted). Because I find that Officers Christina Alfonsi and James O’Leary, had an objectively reasonable belief that Ms. Sandra Rentfro had authority to consent to a search of a common area within her son’s residence, I respectfully dissent.
It is reasonable for an officer to infer that a resident’s guest would have at least “joint access” to common areas such as an entryway, kitchen, and living room. See United States v. Ladell, 127 F.3d 622, 624 (7th Cir. 1997) (“Third-party consents to search the property of another are based on a reduced expectation of privacy in the premises or things shared with another.”). Officers Alfonsi and O’Leary knew several facts when Rentfro, the mother of the *758 owner of the residence, Raymond Fletcher, allowed them entry into the residence: (1) Rentfro had reported a domestic disturbance involving Chavez .within the residence, (2) Chavez possessed a firearm the location of which was unknown, (3) Rentfro emerged from the residence to greet the officers, (4) Rentfro was staying with her son at his residence, and (5) the living room (where the search occurred and where Chavez was located) was visible from the entryway. From these facts the officers could reasonably infer that Rent-fro had joint access to the entryway and living room, both of which were common areas that comprised a continuous and unobstructed living space. That Rentfro is a family member of the owner’s, and was visiting from Indiana, only bolsters this conclusion.
The majority makes much of what the officers did not know, see Maj. Op. at 756-57, but this merely distracts from the operative inquiry. Our case law does not require, for example, knowledge of whether a third-party can “enter and leave the home at will,” the “frequency of [the third-party’s] visits to the home,” “how often [the third-party] was alone in the home,” “whether [the third-party] invited other guests into the home,” and on and on. Cf. id. This grab-bag of factors may be helpful in some instances, but the majority cites no authority suggesting that satisfying any or all of them is determinative, let alone necessary.
The majority relies on Arreguin and Welch, but those cases actually support a finding of apparent authority here. In Ar-reguin, the officers knew “virtually nothing” about the third-party who opened the door to the residence and consented to a search, yet proceeded to investigate a private bedroom anyway. 735 F.3d at 1176. Here, by contrast, the officers did know Rentfro’s relationship to the owner of the house and searched only a common area to which she clearly had use and access.
Similarly, Welch makes clear the distinction between consent to search common rather than private areas of a residence. Welch involved a party’s consent to search a car and purse located within the vehicle on suspicion that they contained counterfeit money. 4 F.3d at 762-63. The consenting party, McGee, was traveling in the rental car with his girlfriend, Welch. Id. at 765. At the time of consent, the officers knew three things: (1) Welch was McGee’s girlfriend, (2) Welch had traveled with McGee in the rental car, and (3) the purse belonged to a woman. Id. The officers searched both the car and purse, the latter of which contained counterfeit money. Id. at 762-63. The court upheld the search of the car but suppressed the contents of the purse. Id. at 764-65. The court reasoned ■that McGee had authority to authorize the search of the car because he and Welch had “joint access to and mutual use of it.” Id. at 764. But the officers lacked a reasonable belief that he had a similar interest in the purse. Id. at 765. Unlike the car, “Welch had a reasonable expectation of privacy in the contents of her purse.” Id. at 764.
Just as McGee had authority to consent to a search of the rental car in Welch, so, too, Officers Alfonsi and O’Leary reasonably concluded that Rentfro had authority to consent to a search of her son’s living room. The officers did not expand the search beyond common areas of the home into rooms where the owner or another resident might have a reasonable expectation of privacy—the ills identified in Welch and Arreguin.
The officers also confined their search to the scope of Rentfro’s consent. “The scope of a search is generally defined by its expressed object.” Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d *759 297 (1991). Here, the object of the officers’ search was Chavez on suspicion of theft. It was therefore reasonable for O’Leary to enter the living room where Chavez was located to investigate the allegation. Moreover, neither Rentfro nor her son—who had emerged from the back of the residence—objected to O’Leary’s entry into the living room, further indicating that O’Leary acted within the scope of Rent-fro’s consent.
O’Leary’s subsequent pat-down search of Chavez was also reasonable.[1] “We review for clear error a district court’s determination of the voluntariness of a defendant’s consent to a search.” United States v. Brown, 563 F.3d 410, 414 (9th Cir. 2009) (internal quotation marks omitted). O’Leary testified that he asked Chavez, “[d]o you mind if I pat you down for weapons?”[2] Chavez answered “yes,” but then immediately complied with a “consensual pat down” and continued to answer O’Leary’s questions. The district court committed no error—let alone clear error—in finding that Chavez consented to the search.
As the pat-down progressed to the back of Chavez’s waistband, O’Leary testified that Chavez “pulled forward, releasing his hands from my grip,” and “hunched forward” in what could reasonably be characterized as an aggressive stance. The officers then placed Chavez in handcuffs.
Chavez claims that the officers placed him under arrest when they handcuffed him. He argues that the officers lacked probable cause to do so because, at the time he was handcuffed, the officers lacked specific information about a criminal offense. But placing Chavez in handcuffs did not convert a permissible investigatory stop into an unconstitutional arrest. A “brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a Terry stop and does not necessarily convert the stop into an arrest.” United States v. Bautista, 684 F.2d 1286, 1289 (9th Cir. 1982). The detention here was reasonable to protect the officers’ safety after Chavez took an aggressive stance. Accordingly, the district court properly concluded that handcuffing Chavez did not amount to an arrest.
I respectfully dissent.

. Because the majority concludes that Rentfro lacked apparent authority to authorize a search of the residence, it does not analyze the district court’s finding that the officers conducted a valid pat-down search of Mr. Chavez’s person.

. O’Leary subsequently testified that he could not recall the exact phrasing of his question— i.e., whether he asked if Chavez minded if he conducted a pat-down or if he could conduct a pat-down.