# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-3065

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ALAN L. BERNITT,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-CR-210—**J.P. Stadtmueller**, *Judge.*

_____

ARGUED APRIL 2, 2004—DECIDED DECEMBER 15, 2004

_____

Before EASTERBROOK, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Alan L. Bernitt, a resident of Ozaukee County, Wisconsin, was found guilty by jury on two counts of manufacturing marijuana and one count of possessing marijuana with intent to distribute. After the trial, the district court entered a preliminary order of forfeiture for Bernitt's real property on which the marijuana was growing. Bernitt now appeals. Bernitt alleges that the police did not have valid consent to search his home and unattached garage; that the evidence was not sufficient to

support the jury verdict; and finally, that the order for forfeiture of his farm violated the Eighth Amendment's prohibition against excessive fines. We affirm.

## I. Background

Before his incarceration, Bernitt lived on his farm in Ozaukee County, Wisconsin. On July 24, 2002, acting on an informant's tip that marijuana plants were growing alongside Bernitt's home, Ozaukee County police officers John Hoell, Jason Vetter, and Kristopher Martin went to Bernitt's farm to do a "knock and talk" investigation. The purpose of this "knock and talk" was to gather more information. When the police officers arrived, Officer Hoell immediately saw what amounted to 110 marijuana plants growing two to eight feet tall. The plants were adjacent to Bernitt's home and readily visible from the residence's driveway.

When the police officers asked Bernitt about the plants, Bernitt replied that the marijuana grew wild. The police officers arrested Bernitt. The police officers did not *Mirandize* Bernitt. They did, however, handcuff Bernitt and place him in the rear of a marked police car. Officer Hoell testified that he asked Bernitt for his consent to search his house and garage. Bernitt replied by asking if he could come along during the search. After the police officers denied his request, Bernitt stated, "Go ahead and search, you're not going to find anything in the residence anyways." Bernitt testified that he never gave permission for the police to search his unattached garage.

The officers searched Bernitt's residence and found two potted plants in his kitchen. These plants were later determined to be marijuana. When the police officers asked Bernitt about the potted plants, Bernitt replied that they were given to him by a friend. Bernitt stated that these plants were "palm trees." The officers also searched the basement of Bernitt's home. The officers then searched

Bernitt's unattached garage. In the garage, the officers found a refrigerator containing two gallon-size ziplock bags of wet plant material. This material was later determined to be marijuana. On a table next to the refrigerator, the officers found and seized a weighing scale. The scale had marijuana residue on it. In addition, the officers seized 248 marijuana plants from the garden behind Bernitt's home. The garden appeared to be well-tended. The marijuana plants were planted in rows and thriving.

On August 2, 2002, the police received an anonymous letter. The letter informed them that they had missed some marijuana at Bernitt's home during their July search. In response to the anonymous letter, Officer Hoell conducted a reconnaissance flight over Bernitt's property, where he spotted additional suspected marijuana plants.

On September 5, 2002, Officer Hoell went to Bernitt's home to conduct a follow-up investigation. Officer Hoell found ten more marijuana plants growing in the same garden from which the 248 plants were previously seized. He also found a mowed path from the back garden to a wooded section of Bernitt's property. In the wooded section, Officer Hoell found an additional 281 marijuana plants, some eight feet tall.

A grand jury in the Eastern District of Wisconsin returned a three-count indictment against Bernitt: two counts of manufacturing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and one count of possessing marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The indictment stated that Bernitt's offenses involved 100 or more marijuana plants. The indictment also included a forfeiture provision to seize Bernitt's real property under 21 U.S.C. § 853. Bernitt filed a motion to suppress this physical evidence, which the district court, adopting the magistrate's recommendation, denied. Following a two-day jury trial, Bernitt was found

guilty on all counts. In addition, the jury issued a special verdict finding beyond a reasonable doubt that the offenses involved 100 or more marijuana plants, as alleged in the indictment.

Bernitt waived jury consideration of the forfeiture issue. As such, the district court agreed to decide the forfeiture matter based upon the trial record and the parties' written submissions. Bernitt then filed a Motion for Judgment of Acquittal, under Federal Rule of Criminal Procedure 29, which the district court denied. The district court granted the government's motion for a preliminary order of forfeiture. The district court also issued an order forfeiting Bernitt's interest in the real property on which the marijuana plants were found. The district court then sentenced Bernitt to three terms of sixty months, to be served concurrently. Finally, the district court ordered Bernitt to pay a $10,000 fine, and special assessments of $300. Bernitt submitted a timely appeal.

## II.  Analysis

### A.  Search of Bernitt's Home and Garage

The evidence Bernitt seeks to suppress are as follows: (1) two potted marijuana plants taken from his kitchen; (2) two ziplock bags of marijuana; and (3) a scale. The two ziplock bags of marijuana and the scale were both seized from his unattached garage. On appeal from a denial of a motion to suppress, we review the district court's factual findings for clear error and questions of law de novo. *United States v. Lemmons*, 282 F.3d 920, 923-24 (7th Cir. 2002).

It is well-settled under the Fourth and Fourteenth Amendments that warrantless searches are *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is search pursuant to

consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). However, the consent to a police search must be voluntary. *Id.* at 222. Voluntary means the "consent was not the product of duress or coercion, express or implied," which must be determined by looking at the "totality of all the circumstances." *Id.* at 227. The government must prove this by a preponderance of the evidence. *United States v. Saadeh*, 61 F.3d 510, 517 (7th Cir. 1995). To determine whether the consent was voluntary or not, this court may consider factors including: "age, education, and intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; and whether he was in custody." *United States v. LaGrone*, 43 F.3d 332, 334 (7th Cir. 1994); *see also United States v. Strache*, 202 F.3d 980, 985 (7th Cir. 2000) (noting that presence or absence of any one of the factors listed in *LaGrone* is not controlling).

While this case presents some facts which question the voluntariness of Bernitt's consent, reviewing all the facts together, we conclude the consent was valid. It is troubling that Bernitt had been arrested, handcuffed in the back of a police squad car, and not advised of his rights before he gave his consent. However, several facts mitigate our concern. The district court found that Bernitt was an intelligent, articulate adult man, and we have no basis to conclude that these factual findings were clearly erroneous. Furthermore, "the police did not badger [the defendant] for information or consent, nor physically abuse or pressure him." *Strache*, 202 F.3d at 986. In addition, the district court found that Bernitt was in custody for only three to four minutes before the police solicited his consent. *See id.* (finding defendant's consent voluntary even when defendant was in custody for approximately twenty minutes and not advised of his rights). In any case, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *United States v. Watson*, 423 U.S. 411,

424 (1976). In sum, we agree with the district court's conclusion that Bernitt voluntarily consented to the search of his home. The potted plants found in his kitchen, therefore, were properly submitted into evidence.

The question remains of whether the scope of Bernitt's consent included his unattached garage. Bernitt contends that even if we conclude his consent was voluntary, we should find that his consent only permitted search of his "residence." Bernitt contends that he limited the scope of the search only to his home when he said, "Go ahead and search, you're not going to find anything in the residence anyways." On the other hand, at the suppression hearing, Officers Hoell and Vetter testified that Officer Hoell asked Bernitt for permission to search *both* his residence and garage.

"A suspect may of course delimit as he chooses the scope of the search to which he consents." *Florida v. Jimeno*, 500 U.S. 248, 252 (1991). Moreover, while the officers testified at the suppression hearing that consenting to the search of Bernitt's "residence" included, in their minds, search of Bernitt's garage, the proper inquiry under the Fourth Amendment is that of objective reasonableness. In other words, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251; *see also Lemmons*, 282 F.3d at 924 ("The scope of consent is defined by gauging, under the totality of the circumstances, what a typical reasonable person would have understood it to be." (internal citations omitted)).

Bernitt suggests that the term "residence" is narrow, and does not include an unattached garage. However, even if the word "residence" cannot be reasonably construed as encompassing an unattached garage, determination of the scope of consent in this case turns on the district court's findings of fact. Here, we have a situation in which there is conflicting testimony. Bernitt said he only consented to the

search of his home, if anything. Officers Hoell and Vetter both testified that Officer Hoell asked for and received permission to search both Bernitt's residence and garage. In support of his position, Bernitt points to Officer Hoell's written account which states:

> I asked MR. BERNITT if he had any illegal substances or paraphernalia within the residence. BERNITT advised that he did not. I asked BERNITT if I could have consent to search his residence for any further marijuana growth. BERNITT advised that I did have permission to search his property further. . . . Further search of the property led us into the garage area. . . .

The magistrate judge who presided over the suppression hearing credited the officers' testimony over that of Bernitt. The magistrate judge found Bernitt's testimony concerning the search of his garage "unworthy of belief." This finding, including the magistrate's credibility determinations, were adopted by the district court. On appellate review of a district court's ruling on a motion to suppress, "[w]e review all findings of historical fact and credibility determinations under the clear error standard." *United States v. May*, 214 F.3d 900, 905 (7th Cir. 2000). Under this standard, we cannot accept Bernitt's argument to give more weight to Officer Hoell's written report over the two officers' testimony at the suppression hearing. Nor do we find that it was clear error for the district court to credit the officers' testimony concerning the scope of the consent given. Officer Vetter and Hoell's testimony can be construed as consistent with the written report. Accordingly, we conclude that the district court correctly denied Bernitt's motion to suppress the evidence seized in his garage.

## B. Sufficiency of the Evidence

When reviewing a conviction for sufficiency of the evidence, our "threshold inquiry is whether 'after viewing the

evidence in the light most favorable to the prosecution, *any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'* " *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will overturn a jury verdict on a challenge to the sufficiency of the evidence only if after viewing the evidence in the light most favorable to the government ". . . the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *Id.*; *see also United States v. Brown*, 328 F.3d 352, 355 (7th Cir. 2003). In so doing, this court does not weigh evidence or make credibility determinations. *Brown*, 328 F.3d at 355. Bernitt has not met this high burden for the reasons stated below.

    1.   Count One: Manufacturing Marijuana—Seized in July 2002

Count One of the indictment charges Bernitt with manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). The elements of this offense consist of the following: (1) that the defendant manufactured a controlled substance; (2) that the defendant did so knowingly or intentionally; and (3) that the defendant knew that the substance he manufactured was a controlled substance. 21 U.S.C. § 841(a)(1).[1]

---

[1] As the indictment specifically alleged, Bernitt's offenses involved 100 or more marijuana plants. As the jury issued a special verdict finding Bernitt guilty, he is subject to the penalties under 21 U.S.C. § 841(b)(1)(B)(vii). That subsection provides in pertinent part: "In the case of a violation of subsection (a) of this section involving . . . 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight. . . such person shall
(continued...)

Bernitt claims that the evidence is insufficient to show that he "manufactured" marijuana. Bernitt alleges that the plants were growing wild on his property. However, several facts belie Bernitt's asserted defense. The definition of manufacturing includes the "production" of a substance. 21 U.S.C. § 802(15). Production is in turn defined as "planting, cultivation, growing, or harvesting of a controlled substance." 21 U.S.C. § 802(22). At trial, Officer Hoell testified that there were 110 marijuana plants ranging in height from two to eight feet growing alongside Bernitt's house. According to Officer Hoell, the plants "seemed very healthy and lush." Officer Hoell also testified that he found 248 marijuana plants in Bernitt's garden behind his home. In Officer Hoell's estimation, these plants were well-tended. Half of the marijuana patches were weeded and the marijuana plants were green, lush, and growing thick, even though the grass surrounding the plants was brown and dry. Moreover, Officer Hoell found the marijuana plants in the garden growing in rows. Finally, Bernitt also admitted at trial that he picked leaves from the plants growing alongside his house to make "herbal tea" to ease the taking of his medication. Viewing these facts in the light most favorable to the government, they together evince cultivating and harvesting of marijuana. We conclude there is sufficient evidence of "manufacturing" marijuana to sustain the jury's verdict.

### 2. Count Two: Possessing Marijuana with Intent to Deliver

Bernitt claims that there was no evidence before the jury establishing that he made any sales or deliveries of mari-

---

[1] (...continued)

be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual."

juana to anyone. To prove that the defendant possessed marijuana with the intent to deliver, the prosecution had to prove beyond a reasonable doubt the following: (1) that the defendant knowingly or intentionally possessed marijuana; (2) that the defendant possessed marijuana with the intent to distribute it; and (3) that the defendant knew the substance he possessed and sought to distribute was a controlled substance. 21 U.S.C. § 841(a)(1); *see also United States v. Starks*, 309 F.3d 1017, 1022 (7th Cir. 2002).

While there appears to have been no direct evidence presented which showed that Bernitt processed the drug for commercial purposes or delivered it to anyone, this circuit's precedent holds that the quantity and packaging of drugs, as well as the presence of drug paraphernalia, can be sufficient to support the inference of an intent to distribute. Hence, this evidence can support a conviction for possession with intent to distribute under 21 U.S.C. § 841(a). *See United States v. Folks*, 236 F.3d 384, 390-92 (7th Cir. 2001) (finding that plastic bags and a scale covered with drug residue constituted evidence to support conviction for possession with intent to distribute a controlled susbstance); *United States v. Billops*, 43 F.3d 281, 285 n.5 (7th Cir. 1994) ("A conviction for possession with intent to distribute under § 841(a) can be supported by the possession of a quantity of drugs larger than needed for personal use." (internal quotations omitted)) and cases cited therein; *United States v. Garrett*, 903 F.2d 1105, 1113 & n.10 (7th Cir. 1990) (collecting cases which regard packaging of drugs as supporting inference of intent to distribute).

The government presented the following evidence: (1) the presence of over 300 healthy, well-tended marijuana plants on Bernitt's property; (2) a weighing scale with marijuana residue; and (3) two ziplock bags of the drugs evenly measured at approximately 138 grams each, stored in Bernitt's refrigerator. All of this evidence, viewed in the government's favor, supports the jury's finding of guilt on this count.

### 3. Count Three: Manufacturing Marijuana—Seized in September 2002

The basis for this count lies in the 281 marijuana plants the police found in the wooded area on Bernitt's property on September 5, 2002. As the district court noted, the evidence presented at trial showed a mowed path on Bernitt's property from his back garden to the wooded area; a foot-path from the mowed area to the plants; that the plants were great in number (281) and in size (some over 8 feet tall); and that they were growing together in a bunch, rather than scattered the way in which wild marijuana plants tend to grow, according to Officer Hoell's trial testimony. Applying the standard for review of sufficiency of the evidence challenges discussed above, a rational jury could have found Bernitt guilty on this count on these facts.

### C. Forfeiture of Bernitt's Real Property

Bernitt contends that the district court's order to forfeit his thirty-acre property subjected him to an excessive fine under the Eighth Amendment. The district court rejected Bernitt's Eighth Amendment argument. We review a district court's excessiveness determination de novo. *United States v. Bajakajian*, 524 U.S. 321, 336 (1998).

Title 21 U.S.C § 853(a) states that any person convicted for a violation of 21 U.S.C. § 841(a)(1) "shall forfeit to the United States . . . any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." As forfeiture under § 853(a) is punitive, the Eighth Amendment limits its application. *See Libretti v. United States*, 516 U.S. 29, 39 (1995). A punitive forfeiture violates the Eighth Amendment's excessive fines clause if it is "grossly disproportional to the gravity of a defendant's offense" or otherwise does not bear "some relationship to the gravity of the offense it is designed to punish." *Bajakajian*, 524 U.S. at 334. Moreover,

"[i]n considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence," *id.* at 339 n.14; after all, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." *Id.* at 336.

Congress has construed Bernitt's offenses as quite grave. For each count of manufacturing 100 or more marijuana plants, Congress imposes 5 to 40 years of imprisonment and a maximum fine of $2 million. For possession with intent to distribute, prison time can be up to 20 years plus a maximum fine of $1 million. Bernitt's penalty of $115,500 is significantly lower than the total penalty that the district court could have imposed.[2] Given the potential punishment the district court could have imposed on Bernitt, the government's seizure of Bernitt's property valued at $115,500 is not grossly disproportionate to the gravity of the harm the jury found Bernitt caused. *See United States v. Vriner*, 921 F.2d 710, 714 (7th Cir. 1991) (holding that forfeiture under mandatory language of § 853(a) of property on which warehouses used to store marijuana were located did not violate the Eighth Amendment when defendant failed to show "that the total penalty imposed [on him] was disproportionate to the offenses for which he was convicted").

### III. Conclusion

For the reasons stated above, we AFFIRM.

---

[2] The total amount that the district court could have imposed for Bernitt's three counts amounts to $5 million.

No. 03-3065                                                    13

A true Copy:

    Teste:

                           _____
                           *Clerk of the United States Court of Appeals for the Seventh Circuit*