In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2229

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

YU TIAN LI,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-CR-212—**William C. Griesbach**, *Judge.*

ARGUED DECEMBER 8, 2009—DECIDED AUGUST 3, 2010

Before EASTERBROOK, *Chief Judge*, and ROVNER and
TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Yu Tian Li was convicted after
a jury trial of two counts of harboring an alien for com-
mercial advantage or private financial gain, 8 U.S.C.
§ 1324(a)(1)(A)(iii), (a)(1)(B)(i). Li appeals, arguing that
the evidence was insufficient to support his convictions.
He also challenges one of the jury instructions given
by the district court and the forfeiture of his residence.
We affirm.

Li, a naturalized U.S. citizen, operated a restaurant in DePere, Wisconsin, called China King Buffet. In late 2007 federal authorities received a tip that a China King employee might be working in violation of the immigration laws. After surveillance revealed Li shuttling approximately half a dozen people between his residence and his restaurant, agents from Immigration and Customs Enforcement (ICE) interviewed Li and obtained permission to look around his home. Agents discovered three illegal aliens, Xiao Xi Zhang, Francisco Torres-Hernandez, and Gen Fang Wang, living in the house. All three worked at China King.

Li was charged with three counts of harboring an illegal alien for commercial or private gain. At trial Zhang, Torres-Hernandez, and Wang testified via videotaped deposition. Each admitted that he was unlawfully present in the United States and had been living at Li's home, though Torres-Hernandez had been living with Li and working at China King for only a few days. All three acknowledged that Li never asked them to complete employment-related paperwork. In addition, Zhang testified that he "divulged" his illegal immigration status to Li after the two men got to know each other.

The ICE agents who interviewed Li and conducted surveillance of his home also testified. The agents noted Li's refusal during his interview to reveal the names of his employees and described how the drapes of his home were constantly shut during the surveillance period.

The jury saw videotapes taken by the agents of the surveillance and search of Li's residence. The tapes showed mattresses on the ground throughout the home.

The jury also heard from Warren Gordon, a records supervisor with the Wisconsin Department of Workforce Development. Gordon testified about the wage records submitted by Li for China King Buffet from late 2007 to 2008. He explained that such records are used to compute the amount employers must contribute to the state unemployment fund. The records can also be manipulated, he added: by under-reporting the number of employees on their payroll, employers can lower their required contributions. The names Zhang, Torres-Hernandez, and Wang do not appear in the records.

At trial the district court took judicial notice that in 2007 and 2008 Wisconsin required employers to pay their tipped employees $2.33 per hour. In his deposition Zhang testified that Li paid him approximately $150 to $200 per month in base pay. The prosecutor used this information in his closing argument to argue that, assuming a 40-hour work week, Li paid Zhang approximately only $1.25 per hour.

At the close of trial Li's counsel moved to dismiss all charges, arguing that the government had failed to present sufficient evidence that Li either knew or recklessly disregarded that Zhang, Torres-Hernandez, and Wang were in the country illegally. The district judge denied the motion. The jury found Li guilty of harboring Zhang and Wang for commercial advantage or private financial gain, but acquitted him of harboring Torres-Hernandez. The judge sentenced Li to two concurrent 15-month terms of imprisonment and imposed a $10,000 fine. On the government's motion, the court also ordered Li to forfeit his home.

## I.

On appeal, Li first contests the sufficiency of the evidence supporting his convictions. We will overturn a jury verdict for insufficient evidence only if, viewing the evidence in the light most favorable to the government, the record shows that no rational trier of fact could have found guilt beyond a reasonable doubt. *United States v. Vaughn*, 585 F.3d 1024, 1028 (7th Cir. 2009). Li maintains that there was insufficient evidence to prove that he knew or recklessly disregarded that Zhang and Wang were illegally in the country; knowingly concealed, harbored, or sheltered them from detection; and did so for commercial advantage or private financial gain.

According to Li, nothing in the record directly establishes that he knew or recklessly disregarded Zhang's and Wang's immigration status. He acknowledges that there was "a passing mention through various hearsay testimony" that he might have known about Zhang's status, "but that is not clear." However, Zhang explicitly testified in his deposition that he had "divulged" his status to Li. In addition, the government presented evidence that Li did not require Zhang or Wang to complete any paperwork before they were hired at China Buffet. A reasonable jury could have concluded that such inattentiveness reflected Li's knowledge or reckless disregard of Zhang's and Wang's illegal status.

Li also argues that his acquittal on charges of harboring Torres-Hernandez meant that the jury did not believe that he was aware of or recklessly disregarded Torres-

Hernandez's illegal status, and so he could not have been aware of or recklessly disregarded the status of Zhang and Wang. But this argument overlooks the key difference between Torres-Hernandez and the other two: Torres-Hernandez had been living with and working for Li for only a few days before his arrest, while Zhang and Wang had worked for Li for several months. A reasonable jury could have concluded that Li might not have learned about Torres-Hernandez's status after only a few days, but that he knew of or could have discovered Zhang's and Wang's illegal status during their lengthier employment.

Li next asserts that the government did not meet its burden of proving that he knowingly concealed Zhang and Wang from detection. He argues that the evidence adduced at trial showed only that he allowed the aliens to stay at his home and transported them to work, activities incidental to their employment at his restaurant. But in *United States v. Ye*, 588 F.3d 411, 417 (7th Cir. 2009), we denied a similar sufficiency challenge regarding the defendant's intent to prevent authorities from detecting illegal aliens. We emphasized that the defendant had failed to maintain employment records for his illegal workers, and that his illegal employees "could have been exposed" if the records had been maintained properly. *Id.* We also noted that the defendant had leased apartments for the aliens, "thereby permitting them to keep their identities under wraps." *Id.* Here, similarly, Li helped Zhang and Wang avoid detection by omitting their names from his wage records and providing them with a place to live. Moreover, as the ICE agents testified,

Li refused to disclose the names of his employees. This also supports an inference that he sought to conceal the aliens' presence.

Further, Li contends that there was insufficient evidence to show that he harbored Zhang and Wang for financial gain. He maintains that any gain he received from the aliens resulted from their *employment* with his business, not from his role in concealing their presence from the authorities.

Li misapprehends the aim of § 1324. Although § 1324 is used to prosecute people who smuggle aliens into the United States for financial gain, it also covers those who realize financial gain by hiring illegal aliens. As the Eleventh Circuit observed in *United States v. Zheng*, 306 F.3d 1080, 1086 (11th Cir. 2002), "[t]he foundation of § 1324 was Congress' acknowledgment that there was a severe problem with the employment of illegal aliens." For this same reason, in *United States v. Calimlim*, 538 F.3d 706, 714-15 (7th Cir. 2008), we rejected the defendants' argument that the evidence was insufficient to show that they had harbored an alien as their live-in housekeeper for private financial gain. We concluded that the alien's labor came "at a significantly lower price than a comparable American," and that this discrepancy was enough of a pecuniary motive to prove financial gain. *Id.* at 715. The evidence adduced at Li's trial similarly supported an inference that he derived financial advantage from Zhang's and Wang's illegal status. Li paid Zhang less than the state minimum wage he would have had to pay a legal employee. Moreover, as Gordon testi-

fied, Li's omissions of Zhang and Wang from his wage records allowed him to reduce his required payments into the state unemployment fund. Although Li might have found legal employees who were willing to work unreported, a reasonable jury could have concluded that Zhang's and Wang's desire to remain undetected facilitated the scheme.

## II.

Li next argues that the district court gave an erroneous jury instruction regarding the mens rea required to convict for harboring an alien. He asserts that the court erred by not instructing the jury that the government was required to prove that he *purposefully* concealed Zhang and Wang from the authorities in violation of the law.

Li waived the right to challenge this jury instruction on appeal. We have repeatedly held that approval of a jury instruction in the district court extinguishes any right to appellate review of the instruction. *See United States v. Conner*, 583 F.3d 1011, 1027 (7th Cir. 2009); *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996). Not only did Li fail to object to the challenged instruction in the district court, but the record shows that his trial counsel *proposed* the very phrasing Li now disputes. Having proposed a jury instruction virtually identical to the instruction actually used by the district court, Li cannot now contest that instruction.

### III.

Finally, Li challenges the criminal forfeiture of his home. Specifically, he maintains that he did not receive notice of the possibility of forfeiture, and so the forfeiture violates due process. He also contends that the forfeiture constitutes excessive punishment in violation of the Eighth Amendment.

The record directly belies Li's claim that he was not notified of the possibility of forfeiture. His indictment included a forfeiture notice explaining that the government would seek forfeiture of his home under 8 U.S.C. § 1324(b) and 18 U.S.C. § 982 if he were convicted of the harboring charges. Moreover, after trial but before sentencing the government moved—without objection from Li—for a preliminary order of forfeiture.

Li's excessive-punishment argument also fails. In order to establish that the forfeiture of his home violates the Eighth Amendment, Li must show that the forfeiture is "grossly disproportional" to the crime of harboring an alien or "otherwise does not bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bernitt*, 392 F.3d 873, 880 (7th Cir. 2004) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Li asserts, first, that the forfeiture is grossly disproportional to his offense because it leaves his minor children homeless. But this contention is contradicted by Li's presentence report, which provides (and he does not dispute) that his children have resided with their uncle in New York since 2004, when Li's first wife passed away. Li also argues that the forfeiture of his house is grossly

disproportional because he was sentenced to only 15 months' imprisonment and a $10,000 fine, while his home, which he owns outright, was assessed as having a fair market value of $179,200. But the authorized penalties for harboring an alien are evidence of the crime's assessed gravity, *see Bernitt*, 392 F.3d at 880, and Congress has authorized a maximum sentence of 10 years' imprisonment and a maximum fine of $250,000 for each count of conviction for harboring, 8 U.S.C. § 1324(a)(1)(B)(i); 18 U.S.C. § 3571(b)(3). Li is correct that he received a sentence well below the maximum penalties authorized, but those penalties reflect the seriousness with which Congress views harboring an alien for financial gain. Given the potential punishment the district court could have assessed, the forfeiture of Li's home is not so grossly disproportionate to the gravity of his convictions as to be excessive.

Li also argues in his reply brief that it was reversible error for the district court to admit the aliens' videotaped depositions at trial, but arguments raised for the first time in a reply brief are waived. *See, e.g., United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009).

AFFIRMED.