In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1231

YU TIAN LI,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-C-810—**William C. Griesbach,** *Judge.*

SUBMITTED JUNE 21, 2011[1]—DECIDED AUGUST 4, 2011

[1] Pursuant to Seventh Circuit Internal Operating Procedure 6(b), this appeal was submitted to the panel of judges that disposed of Li's direct appeal of his conviction and sentence. *See United States v. Yu Tian Li*, 615 F.3d 752 (7th Cir. 2010). Neither party has included in its brief a statement indicating that oral argument is necessary, *see* Fed. R. App. P. 34(a)(1) and Circuit Rule 34(f), and upon review of the briefs and the record and consideration of the standards set forth in Fed. R. App. 34(a)(2), the panel has determined that oral argument is unnecessary to the resolution of this appeal. The appeal was therefore submitted on the briefs and the record.

Before EASTERBROOK, *Chief Judge*, and ROVNER and TINDER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Yu Tian Li owned and operated a restaurant in DePere, Wisconsin. An anonymous tip led the FBI to conduct surveillance of Li, whom they observed regularly transporting about four people back and forth between his home and the restaurant. When Li consented to a search of his home, authorities detained three people who were illegally present in the United States. They also found what looked like a make-shift dormitory in Li's basement and garage, with mattresses on the floor and coin-operated laundry machines in the basement.

A jury convicted Li of two of three counts of illegally harboring or shielding illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). The district court sentenced Li to fifteen months of imprisonment on each count, to be served concurrently, and two years of supervised release. The court also ordered that he pay $10,000 in fines and forfeit his house. This Court affirmed the conviction on appeal. *United States v. Yu Tian Li*, 615 F.3d 752 (7th Cir. 2010).

Li filed a motion in district court to vacate his conviction pursuant to 28 U.S.C. § 2255, arguing that his counsel was ineffective in the following four ways: by proposing an incorrect jury instruction; by failing to object to video-taped testimony of the witnesses against Li; by failing to ensure that a language barrier did not prevent him from communicating with Li; and finally, by preventing Li from testifying on his own behalf. The district court rejected each of these arguments and Li appeals.

When a district court denies a petition under § 2255, we review fact findings for clear error and issues of law de novo. *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006). To succeed on a claim for ineffective assistance of counsel, Li must show both that "his attorney's performance was objectively deficient—in other words, that it fell outside the wide range of competent representation—and that he was prejudiced by the subpar representation." *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). In order to establish prejudice, he must show that there is a reasonable probability that but for his counsel's mistakes, the result of the proceedings below would have been different, such that the proceedings were fundamentally unfair or unreliable. *Strickland*, 466 U.S. at 694. To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, our review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. "The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). *See also United States v. Lathrop*, 634 F.3d 931, 937-38 (7th Cir. 2011), *petition for cert. filed*, (U.S. June 13, 2011)

(Nos. 10-11044, 10A1145) (noting that, provided counsel's reasons for not questioning further were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient.").

We consider first Li's argument that his counsel should have proposed a specific intent instruction. Because there was no controlling case law nor pattern jury instruction for alien-harboring in the Seventh Circuit, Li's trial counsel proposed a jury instruction modeled after one used in the Eleventh Circuit. See (R. 63, p. 17 & R. 75, p. 7).[2] Using a variation of the Eleventh Circuit's pattern, the district court instructed:

> To sustain each charge of harboring an illegal alien for purpose of commercial advantage or private financial gain in violation of 8 U.S.C. § 1324(a)(l)(B), the government must prove the following four elements beyond a reasonable doubt:
>
> First, that the alien named in the indictment entered or remained in the United States in violation of the law;
>
> Second, that the defendant knowingly concealed, harbored, or sheltered from detection the named alien within the United States;
>
> Third, that the defendant either knew or acted in reckless disregard of the fact that the named alien entered or remained in the United States in violation of the law; and

---

[2] Record citations are to the district court case in this matter, No. 10-C-810.

Fourth, that the defendant committed such offense for the purpose of commercial advantage or private financial gain.

(R. 75, p. 7). This language reflects the statute itself which defines the criminal act as:

knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

8 U.S.C.A. § 1324 (a)(1)(A)(iii).

Li's brief states that counsel should have requested a "specific intent" instruction, but fails to specify what additional language the jury instruction should have contained or how requiring intent would have changed the nature of this case at all.

Under the *Strickland* standard, we certainly cannot say that it was outside the realm of reasonable professional assistance for Li's counsel to propose a jury instruction similar to that used by the Eleventh Circuit and reflecting the general intent requirement in several other circuits, where there was no controlling law in this Circuit. *See, e.g., United States v. Khanani*, 502 F.3d 1281, 1287 (11th Cir. 2007) (jury only instructed that it must find that defendant knowingly harbored aliens and that defendant knew or acted in reckless disregard of the

alien's status)[3]; *United States v. Dejesus-Batres*, 410 F.3d 154, 162 (5th Cir. 2005) (specific intent to violate the immigration laws is not required to prove alien harboring); *see also United States v. Deguzman*, 133 Fed. Appx. 501, 506 (10th Cir. 2005) (noting, in a non-precedential opinion, that specific intent is not necessary to prove illegal harboring charge).

Li argues that had his trial counsel done better research, he would have uncovered cases which supported a specific intent instruction. The cases he cites, however, both involve a specific intent instruction in cases involving the transportation or importing of illegal aliens. *United States v. Parmlee*, 42 F.3d 387, 391 (7th Cir. 1994), *United States v. Nguyen*, 73 F.3d 887 (9th Cir. 1995). In those cases the courts expressed concern about various hypothetical situations in which someone like a taxi driver or boat operator might transport an alien without any intent to violate the law. For example, in *Nguyen*, the court expressed concern about exposure to punishment for a boat operator who departed from a coastal port with permanent-resident aliens on board,

---

[3] The jury instructions in this case included an explanation that "[t]he word willfully, as that term is used in the indictment or in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids, that is, with bad purpose either to disobey or disregard the law." The instructions for the alien harboring count included in the jury instructions, however, spoke only of "knowingly" and did not include the term "willfully." *Khanani*, 502 F.3d at 1287.

entered international waters and then returned to shore at a location other than a designated port of entry. *Nguyen*, 73 F.3d at 893. The *Parmelee* court expressed concern about a cab driver who, in a routine commercial transaction, transported an individual who announced his illegal status during the course of the ride. *Parmelee*, 42 F.3d at 391, 393. Without saying so, both courts were expressing concern about the unique nature of transportation—that it involves a transient situation in which the transporter could learn about the illegal status in *media res*, and have no way to complete the innocent transport without violating the law. It is more difficult to imagine a situation in which one could knowingly harbor a known illegal alien without an intent to violate the law. If there were such a situation, the evidence in this case does not reflect it. At trial, the jurors heard evidence that one of the illegal aliens who lived at Li's house for several months divulged his status as an illegal alien to Li. They also heard how he shuttled his tenant/employees back and forth between the garage and the restaurant, how the curtains of the house remained closed at all times, how the defendant refused to tell investigating agents the names of his employees, and that the illegal employees were not asked to complete any paperwork, nor were they listed on any wage or employment records submitted to the state.

Certainly there is room to argue that Li's counsel should have requested a specific intent instruction. The cases on transporting were close enough to support an argument and, had he looked further, he may have found some even closer. *See, e.g., United States v. You*, 382 F.3d 958,

966 (9th Cir. 2004) (in a harboring case, the court in-structed the jury that it must find that appellants had acted with "the purpose of avoiding [the aliens'] detection by immigration authorities—an instruction synonymous with having acted with necessary intent as required in *Nguyen*.") Even were it error for Li's counsel not to ask for a different instruction, however, Li has not demonstrated that the proposed instruction had any adverse effect on Li's defense. As we noted above, the evidence clearly indicated that Li's covert acts were taken in a purposeful attempt to violate the law. The jury was already instructed that the defendant had to knowingly conceal the aliens from detection and that he had to know or act in reckless disregard of their illegal status. Had the jury been explicitly instructed that it had to find that the defendant specifically intended to engage in the proscribed action, the result of the trial would have been the same.

Next, we consider Li's argument that his counsel's representation fell short when he failed to object to the use of videotaped testimony of the witnesses against him. Although the Sixth Amendment guarantees a defen-dant the right to confront witnesses against him, the use of pre-recorded deposition testimony does not violate that right where the witness is unavailable for trial and the defendant had a prior opportunity for cross-examina-tion. *Crawford v. Washington*, 541 U.S. 36, 68 (2004), *United States v. McGowan*, 590 F.3d 446, 453 (7th Cir. 2009). In this case, the government anticipated that the three witnesses against Li—the restaurant workers found living in Li's house—would be unavailable at the time

of trial. All three were in the United States illegally and at the time of the pre-trial conference, one had already been removed and the government anticipated that the other two would follow suit shortly.[4] In anticipation of their unavailability at trial, the government deposed each of the three potential witnesses. The defendant attended each deposition with his attorney who had ample opportunity to question and cross-examine the witnesses.

Initially Li's attorney had objected to the depositions, but then informed the court that he had a "180 degree change in my position," and that for strategic reasons he thought it best for his client that the videotaped deposition testimony be presented in lieu of live testimony. (R. 109, p. 7). Counsel's theory was that the witnesses had not testified to anything particularly incriminating, and therefore Li was better off with their testimony locked in as is, rather than having them re-examined in front of the jury after the government had time to

---

[4] It is not at all clear whether these witnesses could be deemed unavailable for Confrontation Clause purposes pursuant to *Crawford*. Such a determination would be based on the specific facts surrounding their removal and the government's attempts to secure their testimony. *See, e.g., United States v. Tirado-Tirado*, 563 F.3d 117, 123-24 (5th Cir. 2009); *United States v. Yida*, 498 F.3d 945, 954-55 (9th Cir. 2007); *United States v. Gonzales*, 436 F.3d 560, 577-79 (5th Cir. 2006). In any event we need not make this determination as Li waived his right to confront the witnesses and had the right to do so. *United States v. Cooper*, 243 F.3d 411, 418 (7th Cir. 2001).

assess Li's theory of the case. Li's counsel further explained his strategy as follows: "I think it is unfair to my client to have these witnesses called live when the government has seen the opportunity—has seen how I am going to handle them . . . [and] knows essentially what my argument is or at least they may be able to figure out by looking at the transcript." *Id.* Specifically, counsel explained, "[t]here were questions I didn't ask because the witness testified in a way that I thought was advantageous to my client. So I stopped. I didn't cross." *Id.* at 12. Li's counsel objected to particular portions of the transcripts and, after rulings by the district court judge, some portions were redacted for trial. In short, based on counsel's reasoned strategy, Li agreed to waive his right to confront the witnesses provided that the government would not call any of the three deponents to the stand at trial. Li's counsel articulated a reasonable strategy to which a court must give deference. Li does not argue that his counsel did not have ample opportunity to question and cross-examine each witness in the presence of the defense.

Furthermore, the district court conducted an extensive examination of Li to assure that his waiver of his confrontation right was knowing and voluntary. *Id.* at pp. 23-39. The district court judge engaged in this colloquy directly with Li despite the fact that in this Circuit a "defendant's attorney can waive his client's Sixth Amendment confrontation right so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy." *Cooper*,

243 F.3d at 418. Li's rights were well protected and we cannot say that his attorney was ineffective for adopting his articulated strategy.

On a related matter, Li claims that his attorney was ineffective for failing to object to a reading of the tail end of one videotaped deposition. As agreed to at the pre-trial conference, at trial the government played the videotaped deposition testimony of three witnesses. The first two proceeded unremarkably. The videotape of the final witness, however, malfunctioned shortly before the end of the tape. The district court judge suggested that defendant's counsel simply read the remainder of his questions on cross-examination while the judge read the witness' answers. The prosecutor read his few questions of re-direct at the end. In all, the portion of the testimony read to the jury represented six or seven pages of a thirty-page deposition. Li's counsel explained on the record, that he had not objected for strategic reasons as he felt the jury had seen the most important portion of the deposition and that he did not want the jury to see him object to something that was not important. The district court judge gave the defendant the opportunity to recall the jury and play the remainder of the tape (past the portion of the malfunction), but the defendant, after consulting his counsel, declined.

Federal Rule of Criminal Procedure 15 does not require that depositions be videotaped and there is no constitutional right to have a deposition videotaped. Prior to the availability of videotape technology, reading

a deposition into the record was a common method of entering deposition testimony of an unavailable witness into the record. *See, e.g., United States v. Knop*, 701 F.2d 670, 675 (7th Cir. 1983). Li has failed to make a sufficient showing of prejudice. The judge reasonably used his discretion to keep the trial moving along, and defense counsel did not object to the procedure. Finally, the judge gave the precautionary instruction that "[n]othing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be." (R. 75, p. 2). Jurors are presumed to follow limiting or curative instructions unless they cannot be expected reasonably to do so. *United States v. Barnhart*, 599 F.3d 737, 746 n.8 (7th Cir. 2010). Moreover, the court offered Li an opportunity to bring the jury back to replay the end of the videotape, but he declined. Li has failed to demonstrate that his counsel's actions related to the video deposition were deficient or prejudicial.

The defendant next argues that a language barrier led to ineffective assistance of counsel. Subsumed within this argument is defendant's earlier separate claim that he did not knowingly or intentionally abandon his right to testify. The district court judge who presided over several hearings and a two-day trial considered this argument and concluded that no such communication barrier existed. We do not find this conclusion to be clearly erroneous. The court provided Li with a translator in his native language. Li participated in the trial and never notified the court of any problems understanding the proceedings or his counsel. *Gallo-Vasquez v. United*

*States*, 402 F.3d 793, 799 n.1 (7th Cir. 2005) (noting that a petitioner's failure to complain about a communication problem calls into question whether such a problem really existed). The district court also considered the fact that Li lived in the United States for twenty years and, for six years, ran a restaurant in a suburb of Green Bay, Wisconsin where he would have had to communicate with patrons, employees and vendors who are not Chinese. After Li expressed some uncertainty about whether or not to testify, he was given time to consult with his attorney and then engaged in an extensive colloquy with the court:

> MR. GEARY: Well, I think my client after discussing it with me has advised me that he wishes to waive his right to testify and move forward with the trial.
>
> THE COURT: Okay. Mr. Li, is that correct?
>
> THE DEFENDANT: Correct.
>
> THE COURT: Okay. In other words, you do understand you have the right to testify, but after giving it thought and after listening to your attorney, you've decided not to; is that correct?
>
> THE DEFENDANT: Correct. Correct.
>
> THE COURT: Now, did anyone make any threats against you to get you to give up your right to testify in front of this jury?

THE DEFENDANT: No.

THE COURT: And did anyone make any promises to you to get you to do so?

THE DEFENDANT: No.

THE COURT: Is this your own decision after considering the advice of your attorney? Is it your own decision then not to testify?

THE DEFENDANT: Yes.

THE COURT: Okay. And I can read to the jury the instruction then that tells them that you cannot be punished for not testifying, that it's not evidence for you got [sic] to testify, and it's not to be considered in any way. Would you like me to read that instruction to the jury?

THE DEFENDANT: Yes.

(R. 124, p. 225-26). We cannot find that the district court erred in its factual finding that there was no language barrier that would have prevented Li from the effective assistance of counsel or from testifying.

Finally, Li argues that his motion under 28 U.S.C. § 2255 was improperly denied without a hearing. A district court has discretion to "deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Koons*

*v. United States*, 639 F.3d 348, 354-355 (7th Cir. 2011). The judge who denied the motion was the same one who presided over the case, reviewed the proposed jury instructions, admitted the taped depositions, and through colloquies could assess the defendant's understanding of the English language and his understanding of the proceedings as translated. He was in the best position to conclude that an evidentiary hearing would not provide any more information that could demonstrate the viability of the defendant's claim, and thus did not abuse his discretion in denying a hearing.

As we have detected no unreasonable errors in assistance, we cannot conclude that there was any cumulative effect from these errors that would have amounted to ineffective assistance of counsel as evaluated under the *Strickland* parameters. The decision of the district court is AFFIRMED.