
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 15-10496 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00035-RFB-CWH-1 |
| v. | |
| FRANK CHAVEZ, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware, II, District Judge, Presiding

Argued and submitted October 21, 2016
San Francisco, California

Before:    HAWKINS and CALLAHAN, Circuit Judges, and SOTO,[**] District Judge.

Defendant Frank Chavez was convicted of being a felon in possession of a

firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).  He appeals from the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable James Alan Soto, United States District Judge for the District of Arizona, sitting by designation.

District Court's partial denial of his motion to suppress. Defendant primarily argues on appeal that the District Court improperly found that a third party, who was visiting the house where Defendant was residing, had apparent authority to consent to police officers' entry into the house and living room where Defendant was found in possession of a firearm.

A district court's denial of a motion to suppress is reviewed *de novo*. *See United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013).[1] A district court's factual findings are reviewed for clear error, and its credibility determinations based on testimony are given special deference. *See id.* Whether a person has actual or apparent authority to consent to a search is a mixed question of law and fact that is reviewed *de novo*. *See id.*

"The Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Id.* "A warrantless search of a house is per se unreasonable and absent exigency or consent, warrantless entry into the home is impermissible under the Fourth Amendment." *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000).

---

[1]Unless otherwise noted, internal quotes and citations have been omitted when quoting authority in this Memorandum Disposition.

"Evidence that is recovered following an illegal entry into a home is inadmissible and must be suppressed." *Id.*

Consent to search is a recognized exception to the Fourth Amendment's protection. *See Arreguin*, 735 F.3d at 1174. However, the "existence of consent to a search is not lightly to be inferred . . . ." *Reid*, 226 F.3d at 1025.

> The government has the burden of establishing the effectiveness of a third party's consent. It can do so in three ways. First, the government can come forward with persuasive evidence of both shared use and joint access to or control over a searched area, which would demonstrate actual authority to consent. Second, it can show that the owner of the property to be searched has expressly authorized a third party to give consent to the search. Finally, it may establish consent by means of the apparent authority doctrine.

*United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1994).[2]

Before the District Court and on appeal, the Government did not argue that there was valid consent in this case based on express authorization or actual authority. Rather, the Government only argued that there was valid consent based on apparent authority, and the District Court likewise only found valid consent based on apparent authority. We hold that the District Court erred in its determination as to apparent authority.

---

[2] *Welch* was overruled on other grounds in *United States v. Kim*, 105 F.3d 1579 (9th Cir. 1997).

"Under the apparent authority doctrine, a search is valid if the government proves that the officers who conducted it reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *Welch*, 4 F.3d at 764; *see also Arreguin*, 735 F.3d at 1175 ("Apparent authority is measured by an objective standard of reasonableness, and requires an examination of the . . . surrounding circumstances."). Actual authority exists if one has shared use and joint access to or control over a searched area. *See Welch*, 4 F.3d at 764; *Arreguin*, 735 F.3d at 1174. Apparent authority is applicable only if the facts believed by the officers to be true would justify the search as a matter of law. *See Welch*, 4 F.3d at 764. "A mistaken belief as to the law, no matter how reasonable, is not sufficient." *Id.* at 765. The "government has the burden of establishing apparent authority to consent to each specific area searched, not just authority to consent to a generalized search of the residence." *Arreguin*, 735 F.3d at 1175. "In assessing whether an officer's belief was objectively reasonable, the court considers the facts available to the officer *at the moment*" of the officer's warrantless entry into a home or relevant search of an area. *Id.* (emphasis in the original).

In this case, the officers' warrantless entry into the home where Defendant was residing was based on the consent of a third party (Sandra Rentfro) who was visiting the home. For apparent authority to exist, the officers had to have an objectively

4

reasonable basis to believe that Ms. Rentfro had actual authority to consent to entry into the home and living room. Actual authority would exist if Ms. Rentfro had shared use and joint access or control over the home and living room.

At the moment the officers entered the home based solely on Ms. Rentfro's consent, the officers knew that: (1) Ms. Rentfro did not own the home, (2) Ms. Rentfro did not reside at the home, (3) Ms. Rentfro's adult son (Raymond Fletcher) owned the home and resided at the home with his roommate (Defendant), (4) Ms. Rentfro had come in from out of town to visit with her son for his birthday, and (5) the owner and residents of the home (Mr. Fletcher and Defendant) were present inside the home.

At the moment the officers entered the home based solely on Ms. Rentfro's consent, they did not know any of the following regarding Ms. Rentfro's connection to the home: (1) whether she had a key to the home, (2) whether she could enter and leave the home at will, (3) how often she was alone in the home, (4) whether she was left in charge of the home when the other residents were not home, (5) the frequency of her visits to the home, (6) what rooms she routinely used and accessed when she visited, (7) whether she invited other guests into the home, or (8) whether she could invite guests into the home without the permission of the residents and what areas of the home would these other guests be permitted.

5

Despite the circumstances before them prior to their entry into the home, the officers never asked to speak to the owner or other resident of the home. Rather, they proceeded into the home based solely on the consent of a third party that they knew did not own or reside at the home, and that they knew had come in from out of town to visit her adult son that owned the home in question.

In light of the foregoing, the officers did not have an objectively reasonable basis to believe that Ms. Rentfro had shared use and joint access to or control over the home and living room. Therefore, Ms. Rentfro did not have apparent authority to consent to their entry into the home and living room under the particular circumstances of this case.[3]

As all subsequently found evidence must be suppressed under the fruit of the poisonous tree doctrine as there was no apparent authority to enter the home and living room, we do not address Defendant's alternative grounds for appeal (i.e., that the officers exceeded the scope of Ms. Rentfro's consent to search and they did not have reasonable suspicion or probable cause to search and arrest Defendant). *See United States v. Redlightning*, 624 F.3d 1090, 1102 (9th Cir. 2010).

---

[3]While we recognize the special familial relationship between a parent and child, and this is certainly a factor that is weighed in assessing consent, the officers in this specific case did not have an objectively reasonable basis to conclude that Ms. Rentfro had apparent authority.

**REVERSED.**

*USA v. Frank Chavez*, No. 15-10496

CALLAHAN, Circuit Judge, dissenting:

The apparent authority doctrine requires that a police officer reasonably believe that a person consenting to a search has "shared use and joint access to or control over a searched area." *United States v. Welch*, 4 F.3d 761, 764–65 (9th Cir. 1993) (emphasis omitted). The inquiry turns on "an examination of the actual consent as well as the surrounding circumstances." *United States v. Arreguin*, 735 F.3d 1168, 1175 (9th Cir. 2013) (internal quotation marks omitted). Because I find that Officers Christina Alfonsi and James O'Leary had an objectively reasonable belief that Ms. Sandra Rentfro had authority to consent to a search of a common area within her son's residence, I respectfully dissent.

It is reasonable for an officer to infer that a resident's guest would have at least "joint access" to common areas such as an entryway, kitchen, and living room. *See United States v. Ladell*, 127 F.3d 622, 624 (7th Cir. 1997) ("Third-party consents to search the property of another are based on a reduced expectation of privacy in the premises or things shared with another."). Officers Alfonsi and O'Leary knew several facts when Rentfro, the mother of the owner of the residence, Raymond Fletcher, allowed them entry into the residence: (1) Rentfro had reported a domestic disturbance involving Chavez within the residence, (2) Chavez possessed a firearm the location of which was unknown, (3) Rentfro

emerged from the residence to greet the officers, (4) Rentfro was staying with her son at his residence, and (5) the living room (where the search occurred and where Chavez was located) was visible from the entryway. From these facts the officers could reasonably infer that Rentfro had joint access to the entryway and living room, both of which were common areas that comprised a continuous and unobstructed living space. That Rentfro is a family member of the owner's, and was visiting from Indiana, only bolsters this conclusion.

The majority makes much of what the officers did not know, *see* Maj. Op. at 5, but this merely distracts from the operative inquiry. Our case law does not require, for example, knowledge of whether a third-party can "enter and leave the home at will," the "frequency of [the third-party's] visits to the home," "how often [the third-party] was alone in the home,""whether [the third-party] invited other guests into the home," and on and on. *Cf. id.* This grab-bag of factors may be helpful in some instances, but the majority cites no authority suggesting that satisfying any or all of them is determinative, let alone necessary.

The majority relies on *Arreguin* and *Welch*, but those cases actually support a finding of apparent authority here. In *Arreguin*, the officers knew "virtually nothing" about the third-party who opened the door to the residence and consented to a search, yet proceeded to investigate a private bedroom anyway. 735 F.3d at

-2-

1176. Here, by contrast, the officers *did* know Rentfro's relationship to the owner of the house and searched only a common area to which she clearly had use and access.

Similarly, *Welch* makes clear the distinction between consent to search common rather than private areas of a residence. *Welch* involved a party's consent to search a car and purse located within the vehicle on suspicion that they contained counterfeit money. 4 F.3d at 762–63. The consenting party, McGee, was traveling in the rental car with his girlfriend, Welch. *Id*. at 765. At the time of consent, the officers knew three things: (1) Welch was McGee's girlfriend, (2) Welch had traveled with McGee in the rental car, and (3) the purse belonged to a woman. *Id*. The officers searched both the car and purse, the latter of which contained counterfeit money. *Id.* at 762–63. The court upheld the search of the car but suppressed the contents of the purse. *Id.* at 764–65. The court reasoned that McGee had authority to authorize the search of the car because he and Welch had "joint access to and mutual use of it." *Id.* at 764. But the officers lacked a reasonable belief that he had a similar interest in the purse. *Id.* at 765. Unlike the car, "Welch had a reasonable expectation of privacy in the contents of her purse." *Id.* at 764.

Just as McGee had authority to consent to a search of the rental car in *Welch*, so, too, Officers Alfonsi and O'Leary reasonably concluded that Rentfro had authority to consent to a search of her son's living room. The officers did not expand the search beyond common areas of the home into rooms where the owner or another resident might have a reasonable expectation of privacy—the ills identified in *Welch* and *Arreguin*.

The officers also confined their search to the scope of Rentfro's consent. "The scope of a search is generally defined by its expressed object." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Here, the object of the officers' search was Chavez on suspicion of theft. It was therefore reasonable for O'Leary to enter the living room where Chavez was located to investigate the allegation. Moreover, neither Rentfro nor her son—who had emerged from the back of the residence—objected to O'Leary's entry into the living room, further indicating that O'Leary acted within the scope of Rentfro's consent.

O'Leary's subsequent pat-down search of Chavez was also reasonable.[1] "We review for clear error a district court's determination of the voluntariness of a

---

[1]     Because the majority concludes that Rentfro lacked apparent authority to authorize a search of the residence, it does not analyze the district court's finding that the officers conducted a valid pat-down search of Mr. Chavez's person.

-4-

defendant's consent to a search." *United States v. Brown*, 563 F.3d 410, 414 (9th Cir. 2009) (internal quotation marks omitted). O'Leary testified that he asked Chavez, "[d]o you mind if I pat you down for weapons?"[2] Chavez answered "yes," but then immediately complied with a "consensual pat down" and continued to answer O'Leary's questions. The district court committed no error—let alone clear error—in finding that Chavez consented to the search.

As the pat-down progressed to the back of Chavez's waistband, O'Leary testified that Chavez "pulled forward, releasing his hands from my grip," and "hunched forward" in what could reasonably be characterized as an aggressive stance. The officers then placed Chavez in handcuffs.

Chavez claims that the officers placed him under arrest when they handcuffed him. He argues that the officers lacked probable cause to do so because, at the time he was handcuffed, the officers lacked specific information about a criminal offense. But placing Chavez in handcuffs did not convert a permissible investigatory stop into an unconstitutional arrest. A "brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a Terry stop and does not necessarily convert the stop into an

---

[2] O'Leary subsequently testified that he could not recall the exact phrasing of his question—i.e., whether he asked if Chavez *minded* if he conducted a pat-down or if he *could* conduct a pat-down.

-5-

arrest." *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982). The detention here was reasonable to protect the officers' safety after Chavez took an aggressive stance. Accordingly, the district court properly concluded that handcuffing Chavez did not amount to an arrest.

I respectfully dissent.